Sexton v. Anderson.

SEXTON, *Interpleader*, v. ANDERSON *et al.*, *Appellants.*

1. Fraudulent Conveyance : KNOWLEDGE OF SELLER'S FRAUDULENT INTENT. Generally a sale of property with the intent on the part of the seller to thereby hinder, delay, or defraud his creditors, and knowledge of such intent on the part of the purchaser, renders the sale void, though the purchaser may pay a valuable consideration for the property, because the purchase, under the circumstances, amounts to a participation in the fraud.

2. ———— : PREFERRING CREDITORS. But a debtor, though unable to pay all of his creditors, may pay one or more to the exclusion of others, either in money or the transfer of property, and the favored creditor or creditors may accept such preferences.

3. ———— : MERE KNOWLEDGE BY PURCHASER OF SELLER'S FRAUDULENT INTENT, WHEN IT DOES NOT MAKE CONVEYANCE VOID. If the preferred creditor acts in good faith and takes money or property for the sole purpose of saving a *bona-fide* debt, mere knowledge that the debtor intended to hinder, delay, or defraud his creditors, does not render the transaction void as against the creditor taking the preference, for simple knowledge under such circumstances does not amount to a participation in the intended fraud.

4. Bill of Sale : EXTRINSIC EVIDENCE OF CONSIDERATION. Extrinsic evidence is admissible to show the consideration of a bill of sale of goods.

5. ———— : INSTRUMENTS WHEN CONSTRUED TOGETHER. Where two instruments are executed at the same time and are different parts of the same transaction, they will be construed together.

6. Partners : INDIVIDUAL DEBTS, PAYMENT OF OUT OF PARTNERSHIP FUNDS : GOOD FAITH. A partner, with the consent of the other partners, may apply partnership property to the payment of his individual debt. The transaction to be binding on the partnership creditors must, however, be in good faith and not for a fraudulent purpose.

7. Attachment : VOLUNTARY ASSIGNMENT. When attaching creditors assail a conveyance as fraudulent, they must stand on the case made by them, and cannot prevail in the attachment suit on the ground that the transfer amounted to a voluntary assignment.

*Appeal from Boone Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

95 373
98 309
99 284

95 373
38a 264
95 373
39a 137

95 373
103 7

95 373
106 373
107 119
107 640
45a 77
46a 492
47a 313

95 373
108 294

95 373
112 381
53a 499

95 373
116 176
117 368
54a 7
54a 146

95 373
118 375

95 373
122 428
122 435
125 543
57a 543
60a 540

95 373
130 118
64a 121

95 373
132 88
132 490
133 497
133 662

95 373
74a 656

95 373
80a 190

95 373
159 225
159 226
84a 72
86a 567

95 373
f161 637
161 639
87a 150

95 373
88a 441
95 373
89a 345
89a 346

95 373
165 142
91a 403

95 373
171 689

Sexton v. Anderson.

AFFIRMED.

*E. Smith, S. Turner* and *C. B. Sebastian* for appellants.

(1) The answer to the amended interplea avers that at the time of the conveyance to Elisha Sexton and Bush, by the firm, of their stock in trade, etc., the firm was insolvent, and that such insolvency was known to the grantees; and that the sale was made by the firm, and accepted by Elisha Sexton, in contemplation of such insolvency, and with the intention of hindering, delaying, and defrauding, the other creditors of the firm in the collection of their debts. This, under long-established practice, is a proper issue in matters of this nature. Kneeland on Att., sec. 334; *Bobb v. Woodward*, 50 Mo. 95; *Ryland v. Callison*, 54 Mo. 513. And if the averments of the answer were sustained, the conveyance was void under section 2497, Revised Statutes of Missouri, in relation to fraudulent conveyances. (2) Instructions one, two, and nine given by the court do not in any respect touch the question of the fraudulent character of the bill of sale, on account of its having been made and accepted with intent to hinder, delay, and defraud creditors, which question was directly in issue, and to sustain which evidence was offered and admitted. In cases where the terms of a conveyance are by possibility consistent with good faith and it has upon it the elements of a legal instrument, the question of fraudulent intent and want of good faith in making it must be submitted to the jury. *Brooks v. Wimer*, 20 Mo. 507; *Shepherd v. Trigg*, 7 Mo. 151; *Ross v. Crutsinger*, 7 Mo. 249; *Potter v. McDowell*, 31 Mo. 62; *Chouteau v. Valle*, 11 Mo. 390; *Claflin v. Rosenberg*, 42 Mo. 439; *Henson v. Tootle*, 72 Mo. 632; 1 Wade on Attach., sec. 96. (3) Instructions numbered three, four, and seven

asked by appellants should have been given by the court. *Bank v. Carter*, 38 Pa. St. 446; *Hailstrom v. Eames*, 31 Me. 93; *Sibley v. Hood*, 3 Mo. 290. (4) The court also erred in refusing to give instructions numbered five, six, and eight asked by appellants.

*Boyle, Adams & McKeighan* also for appellants.

(1) The court erred in refusing and giving instructions. (2) The court should have found as a matter of law that the transaction in question was fraudulent and void as to the creditors of Sexton Brothers & Company. *State v. Bank*, 2 Mo. App. 102; *Kitchen v. Reinsky*, 42 Mo. 427; *Lionberger v. Baker*, 88 Mo. 447; *Wilson v. Robertson*, 21 N. Y. 587; *Ferson v. Monroe*, 21 N. H. 462; *Tenney v. Johnson*, 43 N. H. 144; Bump on Fraud. Con. 464, 487. (3) The court should have found for appellants and rendered judgment accordingly. *Wright v. McCormick*, 67 Mo. 426; *Pierce v. Merritt*, 70 Mo. 275. The conveyance was to all intents and purposes a deed of assignment. *Douglass v. Cissna*, 17 Mo. App. 44; *Ring v. Ring*, 12 Mo. App. 88; *Crow v. Beardsley*, 68 Mo. 435.

*S. C. Douglass* for respondent.

(1) Instructions numbered one and two, as to the kind or character of possession required, on the part of the respondent, stated the law very strongly against him and exacted a greater degree of proof than was necessary for his recovery. If the bill of sale was void on its face, possession by respondent, before the levy, cured all defects, and entitles him to recover in this action. *Greeley v. Reading*, 74 Mo. 309; *State ex rel. v. Cooper*, 79 Mo. 464. (2) It devolved on the defendants in the interplea to show that the interpleader had more than mere knowledge or information of the insolvency or

fraudulent purpose of his debtors in the transfer of their property to himself and Bush. *Shelley v. Boothe,* 73 Mo. 77 ; *Dougherty v. Cooper,* 77 Mo. 528 ; *Frederick v. Allgaier,* 88 Mo. 603. (3) One partner cannot apply the partnership funds to the discharge of his own private debt without the assent or consent of his copartners. But it is equally true that all of the partners of a firm can, by their joint act, dispose of the partnership property in the payment of the individual indebtedness of one of the members thereof, provided such disposition be in good faith, and not for fraudulent purposes. *Rogers v. Batchelor,* 12 Peters [U. S.] 230 ; *Dob v. Halsey,* 16 Johns. 34 ; *Managh v. Whitwell,* 52 N. Y. 146 ; *Schmidlapp v. Curry,* 30 Am. Rep. 530 ; *Cotter v. Beaman,* 6 Johns. 40 ; *Stokes v. Stevens,* 40 Cal. 391 ; *City v. Willey,* 35 Iowa, 323 ; *Case v. Beauregard,* 99 U. S. 119 ; *Flanagan v. Alexander,* 50 Mo. 50 ; *Ackley v. Staehlin,* 56 Mo. 561 ; *Phelps v. Neely,* 66 Mo. 558. The deed of sale, executed in due form by all the members of the firm, was *prima facie* valid as their joint act in the disposition of the firm property and it devolved upon the appellants to show it was fraudulent in fact, in order to have vitiated it. (4) Partners have a lien on the joint property for the payment of firm liabilities and their creditors have a *quasi* lien, or rather an equity in the nature of a lien. The equity of the firm creditor is worked out through the equity of the partner, operating to the payment of the partnership debts. This lien is waived if all the partners assent to or join in the disposition of the partnership property to pay the debts of one of the partners, and fraud is repelled when such assent or joint act is shown. *Monagh v. Whitwell, supra ; Rogers v. Batchelor, supra ; Case v. Beauregard, supra ; Carter v. Beaman, supra ; City v. Wiley, supra ; Johnson v. Hersey, supra ;* 3 Kent. Com. 65. (5) The evidence fails to support the fraud charged in appellants' answer. On the contrary, it

shows that the interpleader was in possession of the goods for the purpose of securing himself and others in the payment of certain indebtedness due by and from the firm of Sexton Brothers & Company. (*a*) Fraud must be proved and not conjectured. *Priest v. Way*, 87 Mo. 16. (*b*) The interpleader and other preferred creditors must have participated in the intent to defraud the unsecured creditors of Sexton Brothers & Company, before the debtors' transfer of their property can be considered fraudulent. *Shelley v. Boothe*, 73 Mo. 74; *Dougherty v. Cooper*, 77 Mo. 528.

BLACK, J.—James M. and James W. Anderson brought suit by attachment against William J. and Thomas D. Sexton and James W. Kanatzar, partners doing business under the name of Sexton Brothers & Company. The writ was levied upon a stock of merchandise on the twenty-second of December, 1883. Other creditors attached about the same time, and the property was sold by order of the court. Elisha Sexton interpleaded, claiming the property and the proceeds arising from the sale thereof, amounting to forty-five hundred and thirty-two dollars, by virtue of a sale to him and M. S. Bush. Issues were made on this interplea, in which the attaching creditors take the ground that the sale to Elisha Sexton and Bush was fraudulent as to them. The court, sitting as a jury, found the issues for the interpleader.

The evidence discloses these facts: On the eighteenth of December, 1883, Sexton Brothers & Company made an instrument in writing, in the form of a warranty deed, whereby they sold their entire stock of merchandise and store fixtures to Elisha Sexton and M. S. Bush for the recited consideration of sixty-eight hundred and fifty-five dollars. At the same time and as a part of the same transaction, Elisha Sexton signed

another writing which recites the sale, and in consideration thereof he and Bush agree to pay certain debts of Sexton Brothers & Company, one being a debt of two thousand dollars to Elisha Sexton, another a debt of thirteen hundred and thirty dollars to Bush, with other described debts. By the terms of this contract, they covenant to pay these debts and to release Sexton Brothers & Company from the payment of any of them. It winds up with the following stipulations : "It is further understood and agreed by the parties aforesaid that if the parties of the second part fail to make the amount necessary out of the goods and chattels and fixtures herein bargained and sold to the said parties of the second part, to pay the foregoing indebtedness mentioned, that the said parties of the first part are not to be held liable further than the proceeds of the sale of the said goods and chattels and fixtures, and that the said parties of the second part shall be paid a just and reasonable compensation for services and expenses for selling said goods and chattels and fixtures."

The bill of sale was acknowledged, and was recorded on the twenty-second of December, 1883, just anterior to the levy of the attachment by Anderson & Company. The other document was withheld by the parties thereto, and not made known until it appeared in evidence in the trial of this cause. An issue was made on the trial as to whether Elisha Sexton and Bush had possession of the goods at the date of the attachment, but that issue was found for the interpleader on favorable instructions for the attaching creditors. It is shown that Elisha Sexton and Bush took possession of the property on the eighteenth of December, and sold from the stock until the twenty-second. Bush then brought an attachment suit, and hence does not join in the interplea.

. The evidence for the interpleader is, that the debts mentioned in the agreement were *bona fide*, his own being for money loaned the firm ; that Sexton Brothers

& Company became embarrassed, were pressed by other creditors, applied to him for another loan, but he refused and demanded security for what he had loaned thereon; and that he took the bill of sale and property under these circumstances to secure his and the other specified debts. Other evidence tends to show that Sexton Brothers & Company made gross misrepresentations to their unsecured creditors as to their financial condition, and that they intended, by the transaction in question, to secure their relatives, and cared little or nothing for other creditors.

1. Generally, a sale of property with the intent on the part of the seller to thereby hinder, delay, or defraud his creditors, and knowledge of such intent on the part of the purchaser, renders the sale void, though the purchaser pay a valuable consideration for the property, because the purchase of the property under such circumstances amounts to a participation in the intended fraud. *Dougherty v. Cooper*, 77 Mo. 529; *Frederick v. Allgaier*, 88 Mo. 601. But a debtor, though unable to pay all of his creditors, may pay one or more to the exclusion of others, either in money or the transfer of property; and the favored creditor or creditors may accept such preference. If the preferred creditor, in such cases, acts in good faith and takes the money or the property for the sole purpose of saving a *bona-fide* debt, mere knowledge that the debtor intended to hinder, delay, or defraud his creditors does not render the transaction void as against the creditor taking the preference; for simple knowledge under such circumstances, it is held, does not amount to a participation in the intended fraud. *Shelley v. Boothe*, 73 Mo. 74; *Albert v. Besel*, 88 Mo. 150; *Frederick v. Allgaier, supra*.

In the present case the court was asked, but refused, to declare the law to be, that knowledge, notice, or information on the part of Elisha Sexton, that Sexton Brothers & Company intended, by the deed in evidence,

to hinder, delay, or defraud their creditors, rendered the sale of the stock of goods fraudulent as to the attaching creditors.    The position of the attaching creditors is, that this transaction must be treated as a purchase for a fresh consideration, not the taking of property in payment of an existing debt.    Although the deed does not on its face show that the consideration for the goods was the discharge of existing debts, still the fact could be shown by parol evidence, as evidence aside of the deed or bill of sale.    But in determining the character of this transaction we are not at liberty to stop with the one instrument.    They were both not only executed at the same time, but were different parts of one and the same transaction, and must be construed together.    Bump on Fraud.  Con. [3 Ed.] 363.    This being done there can be no doubt but the sale of the goods was for the purpose of paying the designated creditors ; and under the cases cited, it is not enough to render the transaction void to show that Elisha Sexton had notice or knowledge of a fraudulent design on the part of Sexton Brothers & Company.    It must be shown that he participated in the intended fraud. The instruction was, therefore, properly refused.

2.    One of the debts mentioned in the contract to be paid from the transferred property is a debt of one thousand dollars due by Kanatzar individually to the estate of Emmett Sexton.    This note was given for an interest in the partnership property.    In respect of this, the court was asked to instruct that if it was the intention of Sexton Brothers & Company and the interpleader to pay or secure an individual debt of either member of the firm, as that was the effect and operation of the deed read in evidence, then such preferment was a fraud on the firm creditors and as to them made the deed void. This instruction does not state a correct proposition of law, and was properly refused.    It is to be observed it does not even require the court to find that the firm was

insolvent. One partner has no right to appropriate firm property to the payment of his individual debts, without the consent of his copartners. To do so is a fraud on his copartners, and through their right, firm creditors may pursue the property. But partners may consent to the application of firm property to the payment of the debts of one of the partners. Thus it is said in note 3 to section 109, 1 Coll. on Part. [Wood's notes 6 Ed.] : "If one partner, *with the assent of the others*, sells firm property to his creditor to satisfy his private debt, and the transaction is *bona fide*, the title passes and a partnership creditor cannot compel an application thereof on his debt, as there is nothing through which the equities of the firm creditors can work."

With us each partner is liable for all the partnership debts. The partners may, so long as the firm exists, do with their property as they see fit. The firm creditors have no lien on the partnership property for the payment of their debts, while the firm continues to exist. Partners have a right to have the partnership property applied to partnership purposes, but this is a right or lien which they may waive. Hence the great majority of adjudicated cases are to this effect, that all the partners may, by their joint act, dispose of partnership property in liquidation and payment of a debt owing by an individual member of the firm. The qualification is, that the transaction must be in good faith, and not for fraudulent purposes. *Rogers v. Batchelor*, 12 Pet. 221, 232 ; *City v. Willey*, 35 Iowa, 323 ; *Case v. Beauregard*, 99 U. S. 124 ; *Schmidlapp v. Currie*, 55 Miss. 597 ; s. c., 30 Am. Rep. 530. The cases of *Flanagan v. Alexander*, 50 Mo. 50 ; *Ackley v. Staehlin*, 56 Mo. 558 ; *Price v. Hunt*, 59 Mo. 258 ; and *Forney v. Adams*, 74 Mo. 138, are all in accord with what has been said. These cases recognize the right of one partner to apply partnership property, with the consent of the other partners, to the payment of his

debt. Nor is the authority of these cases shaken by the subsequent case of *Phelps v. McNeely*, 66 Mo. 555, for they are in terms approved. It is the clear deduction from what has been said, that the agreement to pay from the partnership funds a debt of one of the members does not, as a matter of law, render the whole transaction fraudulent. The including of this debt among those to be paid was a matter for the trier of facts to consider in determining whether or not the transaction was fraudulent in fact.

3. It is suggested, probably for the first time in this court, that the two documents, when taken and read together as they must be, resolve the whole transaction into a voluntary assignment. There is a vast deal to be said in favor of this proposition. But it does not follow from being an assignment, that the transaction is fraudulent or void. Our present law in respect of a voluntary assignment, made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors in proportion to their respective claims. The fact that the deed of assignment does not name all the creditors does not render it void. Though part only of the creditors are named, the assignment will enure for the benefit of all. *Crow v. Beardsley*, 68 Mo. 437. Conceding, too, that the debt of Kanatzar was improperly included with the firm debts, that could not invalidate the assignment. *Pinneo v. Hart*, 33 Mo. 561. If an assignment, the creditors should proceed to compel the trustees to give bond and administer the property under the assignment law. It is suggested that they did not have any information of the agreement, converting the bill of sale into an assignment, until the trial of this cause. That may be a very good reason why they should not be precluded from proving up their demands. Their attachments ought not to prejudice their claims under these circumstances. But the attitude of the attaching creditors in this case is,

that, whatever the transaction may be, it was fraudulent, and they are entitled to all of the property. On the case made, the court committed no error in refusing the instructions.

The judgment is, therefore, affirmed. All concur.