*In re* Estate of EDWARDS & WIGGINTON; GODDARD-PECK GROCERY COMPANY *et al.* v. McCUNE, *Appellant.*

In Banc, June 4, 1894.

1. **Partnership :** INSOLVENCY: ASSETS: CREDITORS. The assets of the firm must be applied in the administration of an insolvent partnership estate, to the satisfaction of the firm's creditors in preference to the creditors of the individual partners.

2. ————: ————: ————: INDIVIDUAL CREDITORS. The assets of such insolvent firm may, however, before dissolution, with the consent of all the partners, be applied to the satisfaction of the individual debts of the firm members, if done in good faith.

3. ————: ————: FIRM NOTES: INDIVIDUAL CREDITORS. Firm notes, given in satisfaction of individual debts of the partners long prior to the dissolution of the firm, will not be held fraudulent on the ground alone that the firm was at the time insolvent or was made so by the execution of the notes.

4. ————: ————: ————: ————. Partnership notes made in good faith to the individual creditors of the partners and with the consent of all the members of the firm for the purpose of placing such creditors on equal terms with the firm creditors in case of its insolvency are valid as against the firm creditors.

*Certified from St. Louis Court of Appeals.*

REVERSED AND REMANDED.

*Fagg & Ball* for appellant.

(1) It is insisted that there is no evidence of fraud in this transaction. There is no proof that the firm was insolvent at the time of the execution of the notes to McCune and Wigginton. The note to McCune was

in part for the stock of goods with which Edwards was doing business at the time that E. B. Wigginton became a partner. The other note was for money borrowed by E. B. Wigginton with which he purchased half of the stock and the additional $300 put in for the purchase of new goods. (2) A partnership has the unquestioned right, in the absence of any fraud, to appropriate its property, money or credit to the extinguishment of the individual liabilities of the members of the firm. (3) The execution of the note to McCune and also the note to Calvin Wigginton on the first of July, 1889, was in each case a "novation," and, in the absence of any fraudulent intent, stands upon the same footing exactly as if these two debts had been actually paid with money or property belonging to the firm. *Sexton v. Anderson*, 95 Mo. 373.

*J. D. Hostetter, E. W. Major* and *Eben Richards* for respondents.

(1) The firm was insolvent July 1, 1889, and was made more so by the execution of the notes to McCune and C. Wigginton. (2) Creditors of an insolvent partnership have an equitable right to, or a *quasi* lien upon, the assets of the firm as against creditors of the individual partners. *Dunnica v. Clinkscales*, 73 Mo. 500; *Sexton v. Anderson*, 95 Mo. 373; *Phelps v. McNeeley*, 66 Mo. 554; *Huntley v. Farris*, 103 Mo. 78. (3) Under the circumstances of this case the execution of the two notes in controversy was a fraud on firm creditors. *First.* The payees are relatives of the makers. *Second.* They knew of the insolvency of the firm. *Third.* The merchandise creditors had been told the liabilities to McCune and C. Wigginton were individual liabilities and they had a right to rely upon that fact. *Fourth.* The partnership received no consideration whatever for these liabilities. (4) The mak-

ing of these firm notes amounted to withdrawing firm property from firm creditors to the use of members of the firm, which can only be done when ample property is left to satisfy firm liabilities. *Goodbar v. Cary*, 4 Woods, U. S. C. C. 663; *Wilson v. Robertson*, 21 N. Y. 537; *Menagh v. Whitwell*, 52 N. Y. 146; *Keith v. Finke*, 47 Ill. 272; *Pritchett v. Pollock*, 82 Ala. 169.

BURGESS, J.—This case was certified to this court from the St. Louis court of appeals for the reason that one of the judges of that court was of the opinion that the decision filed in that court was in conflict with the decision in the case of *Sexton v. Anderson*, 95 Mo. 373.

The opinion of the court of appeals is reported in 47 Mo. App. 307. The statement of THOMPSON, J., of said court, is as follows:

"John McCune presented, for allowance against the assigned estate of the partnership firm of Edwards & Wigginton, a promissory note made by said firm on the first day of July, 1889, for $2,000, payable one day after date to his order, and bearing interest from date at the rate of eight per cent. per annum. Calvin Wigginton also presented a note of the same date and tenor for the sum of $1,926. The assignee allowed both of these notes, and certain other creditors of the firm appealed to the circuit court. The circuit court disallowed the notes, and from its judgment disallowing the note in favor of McCune this appeal is prosecuted. The case was, by consent of parties, submitted to the court without a jury, and no declarations of law were asked or given.

"It appeared in evidence that the partnership firm of Edwards & Wigginton was formed in March, 1889, and made an assignment for the benefit of its creditors in July, 1890. The business was a retail grocery store. The basis of the business was a stock in trade, owned by the appellant, McCune, which McCune sold to

Edwards in 1887 for $2,600. When Edwards took Wigginton in as a partner, in March, 1889, the stock was invoiced at between $3,300 and $3,400. They were to be equal partners, and the arrangement was such, that Wigginton purchased a half interest in the stock in trade and business for $1,626, and then each partner put into the business in cash the sum of $300. The indebtedness of Edwards to McCune was originally evidenced by three unsecured promissory notes, maturing respectively in six, twelve and eighteen months from date. Edwards had borrowed other money of McCune, and had made such payments that, on the first of July, 1889, the indebtedness of Edwards to McCune stood at $2,000. The $1,926 that Wigginton put into the firm, as above stated, was entirely borrowed from his father, Calvin Wigginton. Of this, $900 was in a note, due one day after date, and bearing interest at the rate of one per cent. per annum; $500 was in a like note and the rest not evidenced by any note. Thus it was that the interest of each partner consisted entirely of borrowed capital; that Edwards still owed this claimant, McCune, $2,000 for his interest in the partnership capital and business, and that Wigginton, for his interest therein, owed his father $1,926. We proceed on the view that, what each partner had thus severally borrowed to purchase his interest in the business was an individual, and not a partnership, debt.

"The firm seems to have lost money almost from the start, and McCune, becoming uneasy, requested Edwards to take up the individual notes of Edwards, held by McCune, with the note of the firm. At the same time, Wigginton, Sr., thought that, if McCune was going to get firm paper for the individual note of Edwards, he, Wigginton, Sr., ought to have firm paper for what was due him from his son, as already stated. It was accordingly arranged between the partners and

these individual creditors respectively, that the two creditors should have firm paper; and on the first day of July, 1889, the firm executed its note to McCune in settlement of the individual notes of Edwards, and also its note to Wigginton, Sr., in settlement of the individual debt of Wigginton, Jr., to him.

"The testimony leaves no room to doubt that this was done in contemplation of a possible suspension, and the avowed purpose of it was to put these individual creditors, in the event of a suspension, on an even footing with firm creditors. Edwards testified: 'It was this way: I had a great deal of sickness and had lost on grain I had bought, and McCune insisted on some plan of securing him. He was willing to aid us tide over our difficulties if in any way to make him safe—to take joint note for the firm's note. I spoke to Wigginton, my partner, about it. He, at the same time, owed his father a like amount, or very near it. He insisted that he would want to secure his father as well as John McCune; so we mutually agreed to give them the firm's note for the amount of each claim. Both of these notes were given at the same time.' Further on, Edwards testified: 'We gave a firm note so that, in case of death or failure, they should share and fare like all other creditors.' On the same point the other partner, Wigginton, testifies: 'We saw the business was losing money—saw no prospect of times getting better, owing to competition on each side of us, and we did not care to favor one person and not others. We wanted to treat everybody alike.' When the firm failed some six months later, its liabilities, including these two notes, footed up to about $5,600; its assets were inventoried at $3,149.95; but the assignee realized only the sum of $770 from the sale of the entire stock of goods under order of the court at public auction, and had succeeded in collecting only $70 of the $626 due the

firm from its customers. Of these liabilities about $1,500 were due to merchants from whom it had bought goods."

1. No principle of law is better settled than that, in the administration of an insolvent partnership estate, the assets of the firm must be applied to the satisfaction of the firm creditors to the exclusion of the creditors of the individual partners. *Hundley v. Farris*, 103 Mo. 78; *Bank v. Brenneisen*, 97 Mo. 148, and cases cited in each.

The principle we think equally well settled by the more recent decisions of this court, as well as by the weight of judicial authority in other jurisdictions, that the assets of an insolvent firm, before dissolution, may, with the consent of all the partners, be applied to the satisfaction of all the individual debts of the members of the firm, when done in good faith. *Sexton v. Anderson*, 95 Mo. 380; *Reyburn v. Mitchell*, 106 Mo. 365, and cases cited in each; *Seger's Sons v. Thomas Bros.* 107 Mo. 635.

*Phelps v. McNeely*, 66 Mo. 555, is in conflict with the cases last cited, and the great weight of authority, it should not be followed and is overruled. *Jones v. Lusk*, 2 Met. (Ky.), 356; *George v. Wamsley*, 64 Iowa, 175; *Schaeffer v. Fithian*, 17 Ind. 463; *Kirby v. Schoonmaker*, 3 Barb. Ch. 46; *Kennedy v. Bank*, 23 Hun, 494; *In re Kahley*, 2 Biss. 383; *Warren v. Farmer*, 100 Ind. 593; *Case v. Beauregard*, 99 U. S. 119; *Purple v. Farrington*, 119 Ind. 164; *Pepper v. Peck*, 20 Atlantic Rep. 16; *Anderson v. Norton*, 15 Lea, 14; *Huiskamp v. Moline Wagon Co.*, 121 U. S. 310; *Coffin v. Day*, 34 Fed. Rep. 687.

In the case at bar the firm notes were given in satisfaction of individual debts long prior to the dissolution of the partnership, and that transaction can not be declared fraudulent at law on the ground simply

that the firm was, at the time, insolvent or was made so by the act of making these notes.

2.   If the partners composing the firm of Edwards & Wigginton had, by agreement, in good faith, mortgaged or assigned all the assets of the firm, or for the purpose of securing or paying the debts owing by them individually to McCune and Wigginton, respectively, though with the intention of giving them a preference over the firm creditors, the transaction could not be impeached. If, on the other hand, they had given these individual creditors a mortgage on the firm property and to secure their individual debts, with the understanding that they should continue in possession of the property and sell and dispose of it in the usual course of business the mortgage would have been fraudulent and void as to the other creditors.

The object in giving these notes in the name of the firm to McCune and Wigginton was not to give them a preference over the partnership creditors, but was to put them all on an equal footing so that they might share alike in the distribution of the firm's assets in case of the firm's assignment. So long as a firm exists it has the same right to dispose of the firm assets that an individual has of his own property providing always that such disposition is *bona fide*; but if no lien has been created by it on its firm assets and the firm assigns, as in the case at bar, then the firm creditors must be first paid. That the debts of McCune and Wigginton, when first created, were the individual debts of the members of the firm of McCune and Wigginton seems clear.

"Where there is a separate loan of money to one of several joint adventurers, for the purpose of founding a partnership or joint adventure, the firm, when formed, will not be liable for the advance; for the case is not distinguishable from one where several persons are to

contribute their separate proportions of money towards a common fund for joint purposes, and each is to borrow, and does borrow, his own share upon his own separate account and credit. In short, in all cases of this sort, in order to bind the firm, the intended partners must either have had an original authority to purchase goods, or borrow money upon the joint account, and have exercised that authority by a purchase or loan on their account and not on his own exclusive credit, or the transaction must have been subsequently ratified and adopted by the firm, as one for which they were originally liable, or for which they now elect to give their joint security." Story on Partnership [7 Ed.], sec. 148. See, also, *Donnally v. Ryan*, 41 Penn. St. 306; *Wild v. Erath*, 27 La. Ann. 171.

The doctrine that firm assets must be first applied to the payment of the firm's debts is a principle of administration adopted by the courts when, from any cause, they are called upon to wind up the firm business, and find that the members have made no disposition or charge upon its assets. This is accomplished by marshaling the assets; by applying the partnership property to the partnership debts. The right of the firm creditors "is worked out through the partners;" the meaning of which is that they may demand the primary application of the firm assets to the payment of their debts. *Schmidlapp v. Currie*, 55 Miss. 597.

As the right of the firm creditors "is worked out through the partners," it necessarily follows that, whatever the firm, with the consent of all its members, does in good faith with the partnership property, is binding upon them. If, then, the firm had the right to assume, by and with the consent of both of its members, the individual debts due by them respectively to McCune and Wigginton, when this was done and they gave the firm notes and thereby assumed their payment, they

became firm debts and should share *pro rata* in the distribution of the proceeds arising from the sale of the partnership assets with the other firm creditors. This is said to be the conversion of debts, so that, if they were separate debts of the respective partners, they become, by the consent of the members of the firm, the joint debts of all the partners, and will thereafter be treated as such. Story on Partnership [7 Ed.], secs. 368, 369; *Ex parte Peele*, 6 Ves. Ch., 602; *Ex parte Jackson*, 1 Ves. Ch. 131; *Siegel v. Chidsey*, 28 Pa. St. 279. That the firm had the right to assume the individual debts of its members and thereby convert them into debts of the firm in the absence of fraud, and that the individual indebtedness was sufficient consideration for such promise by the firm, the authorities abundantly show. *Siegel v. Chidsey, supra; Case v. Ellis*, 30 N. E. Rep. (Ind.) 907.

From these considerations we are of the opinion the judgment of the court of appeals should be reversed, and the cause remanded to that court with directions to reverse the judgment of the circuit court and remand the cause for a new trial in conformity with the opinion of this court. It is so ordered. All concur.

### SEPARATE OPINION.

BARCLAY, J.—Edwards' original debt to McCune was on account of the purchase price of property which went into the firm assets and constituted the greater part of the capital of the firm of Edwards & Wigginton at the outset of its business. The assumption of that debt by the firm, in the circumstances already stated, was supported in equity by a valuable and meritorious consideration, as explained in *Siegel v. Chidsey* (1857), 28 Pa. St. 279; and the firm note, given for that debt, certainly created a legal obligation on the part of the firm to discharge it.

Under the ruling of this court in *Sexton v. Anderson* (1888), 95 Mo. 373 (8 S. W. Rep. 564), and in the absence of any evidence of actual fraud toward any of the partnership creditors, it seems to me that the firm note to McCune must be held a just charge against the firm assets. Hence my concurrence in the judgment of the court *in banc*.