MAYFIELD WOOLEN MILLS, Appellant, v. H. S. WILSON, Defendant; J. M. WILSON, Interpleader, Respondent.

| 87 145 |
| e176s 128 |

### St. Louis Court of Appeals, February 12, 1901.

**Wife as Interpleader: FRAUDULENT CONVEYANCE: INSOLVENCY OF HUSBAND.** Where a wife, as interpleader, claims property received from her husband in satisfaction of a bona fide debt, her rights are not affected by a fraudulent intention of her husband if she receives the property in good faith as payment, entitled to the property so conveyed to her, notwithstanding her husband's insolvency or her knowledge of such insolvency, unless she participated in the fraud.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*R. O. Hester* and *Walker & Cox* for appellant.

(1) The court erred in refusing plaintiff's declaration of law asked herein. Riley v. Vaughan, 116 Mo. 169; McClain v. Abshire, 63 Mo. App. 333. Having constantly consented

Vol 87 app—10

that he should hold himself out to the world as the owner of this property and contract debts on the credit of it, up to the very hour of his disaster, it would be against the plainest principles of justice, and utterly subversive of everything like fair dealing, to permit her to step in now and withdraw from the process of the law put in motion by his creditors, the very property she had permitted him year after year to represent to be his, and the apparent ownership of which had given him business credit and standing. Besson v. Eveland, 26 N. J. Eq. 471; Humes v. Scruggs, 94 U. S. 23; Bank v. Hamilton, 34 N. J. Eq. 162.

*Ely & Kelso* for respondent.

(1) The courts of this State have uniformly held that the husband may prefer his wife as a creditor and dispose of his property to her in satisfaction of a bona fide debt. Bartlett v. Umfried, 94 Mo. 530; Hart v. Leete, 104 Mo. 317. (2) It is also well settled that the wife's claim to property received from her husband in satisfaction of a bona fide debt is not affected by a fraudulent intention of her husband if she receives the property in good faith as payment; nor is it fraudulent on the part of the husband merely because the transfer has the effect to delay other creditors; and the wife is entitled to the property so conveyed to her, notwithstanding her husband's insolvency or her knowledge of such insolvency. Bump on Fraudulent Conveyances (3 Ed.), p. 183; Sexton v. Anderson, 95 Mo. 373; Shelby v. Boothe, 73 Mo 74; Albert v. Besel, 88 Mo. 150.

BLAND, P. J.—About October, 1895, H. S. Wilson and G. W. Forest agreed to form a co-partnership to carry on the business of retail merchants at Piggott in the State of Arkan-

sas; to buy all the goods possible on credit, to sell them for cash and to continue as long as they could and then make a sham and fraudulent transfer of their stock and keep all the cash and thus defraud their creditors. In pursuance of this agreement they formed the partnership. To start their business they bought a second-hand stock of goods from one Lentz, valued at $5,000, opened up business and began the purchase of goods from wholesale merchants on credit. They continued in business until December 23, 1895, when they made a sham sale of their entire stock to Throgmorton & McNeil. Before the fraudulent sale, they had taken in $21,878.58 cash. Of this amount $2,200 was on hand, which Wilson got hold of and kept. After the fraudulent transfer, they were attached by some of the creditors and judgments amounting to $2,764.12 were rendered against them. These remain unpaid so far as the records of the court, where they were rendered, show. During the continuance of the business they bought goods of the plaintiff of the value of $191, no part of which has been paid. To recover this sum, plaintiff brought suit by attachment against H. S. Wilson (Forrest being dead), and attached a lot of goods kept in a store at Campbell, Missouri, conducted in the name of J. M. Wilson, who interpleaded for the goods. The answer to the interplea alleged that the interpleader is the wife of H. S. Wilson, the defendant in the attachment suit, and set up the fraudulent transfer by Wilson & Forrest to Throgmorton & McNeil; that the interpleader was not seized or possessed of any property, real or personal, and that H. S. Wilson before and after the fraudulent transfer of goods to Throgmorton & McNeil, fraudulently transferred property, money and notes to the interpleader, for the purpose of defrauding his creditors and that the goods attached were bought with the money and property of H. S. Wilson and were subject to levy for the payment of plaintiff's debt.

The issues were submitted to the court sitting as a jury, who found for the interpleader and rendered judgment in her favor. Plaintiff appealed.

Plaintiff proved its account, the fraud practiced by Wilson & Forrest as above set out, the fact that J. M. Wilson is the wife of H. S. Wilson and offered evidence tending to prove that before the failure of Wilson & Forrest, she owned no property, real or personal, in her own right. The interpleader offered evidence tending to prove that in 1883, 1884 or 1885, she inherited from her mother's estate $240, and later, from her grandmother's estate, $217, which she had received in money; that she let her husband use this money; that with a part of it ($360) he purchased eighty acres of railroad land on the installment plan; that when all the payments were made, the land was conveyed to J. M. Wilson. That when Wilson & Forrest purchased the stock of merchandise from Lentz in January, 1895, this eighty acres of land was put into the trade at $800 and a deed was made by Wilson and wife, conveying it to Lentz. That a short time before the failure of Wilson & Forrest, Wilson transferred to his wife two notes aggregating $300, secured by a chattel mortgage on a mill, known as the Gill mortgage, and paid her $300 in money and afterwards paid her $300 more in money, aggregating $900, which would be the amount he owed her, on account of the sale of her land at $800 and the $100 of inheritance money remaining over after paying the purchase price of the land to the railroad company. The evidence further tends to show that the mortgage on the mill was foreclosed by a sale at which Mrs. Wilson was the purchaser; that after bidding in the mill, H. S. Wilson for his wife and as her agent and in her name, operated it for seven or eight months, making a profit of $700, which he deposited in bank to his wife's credit. That Mrs. Wilson sold the mill for $1,300—$200 cash and the balance in monthly

installments—all of which had been paid.  That with these
moneys and with a part of the mill notes, H. S. Wilson
bought the goods attached and other goods, as the agent of and
in the name of his wife, and that after the store was opened in
Campbell, he conducted the business as the agent of his wife
and in her name.  The only property owned by H. S. Wilson
at the time of the trial was a house and lot in Campbell, occu-
pied by himself and family, and valued at from $500 to $700.
At the close of the evidence the plaintiff moved the court to
declare the law as follows:  "The court declares the law to
be that if it finds from the evidence that interpleader J. M.
Wilson sold to J. W. Lentz in January or February, 1895, real
estate to the amount of eight hundred dollars as the purchase
price of part of a stock of goods then bought from said Lentz
by the firm of Forrest & Wilson, of which firm defendant H.
S. Wilson was a member; that said H. S. Wilson was then
and is now the husband of J. M. Wilson; that said Forrest
& Wilson continued in business until December, 1895, and
then conveyed and disposed of all its property with intent to
hinder, delay or defraud creditors, and that said H. S. Wilson
by said transaction conveyed all of his preoprty from the reach
of creditors except a certain note or notes for three hundred
dollars, secured by a mortgage upon a mill, known as the Gill
note and mortgage, and that on the eve of said fraudulent
transfer defendant assigned to interpleader said Gill note and
mortgage as part payment of said debt so owing by him to her
for the said land so conveyed to said Lentz; that plaintiff
herein sold the goods sued for herein during the year 1895,
and after February, 1895, to said Forrest & Wilson and prior
to said fraudulent conveyance by said Forrest & Wilson; that
interpleader sold the property mentioned in said Gill mort-
gage for thirteen hundred dollars in cash and notes, and pur-
chased the stock of goods interpleaded for herein, by and

with the proceeds of said sale of said mill under said mortgage; then the court declares the law to be that said assignment and transfer of said note and mortgage by said defendant to said interpleader was in fraud of the rights of creditors existing at that time, and of the rights of plaintiff herein; that the property attached is liable to the debt of plaintiff, and its verdict must be for the plaintiff and against the interpleader upon the issue of the return of the property interpleaded for herein," which the court refused. No other declarations of law were asked or given. To reverse the judgment plaintiff assigns the refusal of the court to give its declaration of law as error.

The declaration in effect declares the law to be that if H. S. Wilson owed his wife $800 which she let him have to purchase goods, and that after the goods had been purchased, Wilson conveyed the goods for the purpose of defrauding his creditors, he could not, on the eve of making the fraudulent conveyance, assign to his wife an asset not produced by the store, nor in any way connected with it, for the purpose of securing or paying part of the debt of eight hundred dollars he owed his wife. This is not the law—and not the law even if, by the assignment, he intended to defraud his other creditors unless his wife participated in the fraud. Bangs Milling Co. v. Burns, 152 Mo. 350; State to use v. Mason, 112 Mo. 374; Sexton v. Anderson, 95 Mo. 379; Monarch Rubber Co. v. Bunn, 78 Mo. App. 55; Schawacker v. Ludington, 77 Mo. App. 415; Esselbrugge Mercantile Co. v. Troll, 79 Mo. App. 558. And this rule applies, notwithstanding the fact that J. M. Wlison was the wife of H. S. Wilson. Rity v. Vaught, 116 Mo. 169; Hart v. Leet, 104 Mo. 338; Glasgow Milling Co. v. Burns, 144 Mo. 192; Donk Bros. Coal & Coke Co. v. Stephens, 74 Mo. App. 39; Sexton v. Anderson, supra. There was no error in refusing the declaration of law asked.

Woolen Mills v. Wilson.

Appellant contends that J. M. Wilson is in the attitude of permitting H. S. Wilson to hold himself out as the owner of her property, and thereby obtain credit, which he otherwise could not have obtained, and for this reason should not have been permitted to hold the proceeds of the mortgage assigned to her. There is no evidence in the record upon which to base this contention.   H. S. Wilson when he obtained the credits, was the partner of Forrest.   The eight hundred dollars he got out of his wife's lands to help start the business, and which went into it, was so much borrowed from her, and stands on the same footing with respect to the firm of Wilson & Forrest and their creditors, as if he had borrowed that much money from a stranger and put it in the business.

It is strongly indicated by the evidence that the three hundred dollars in money paid by H. S. Wilson to his wife on the eve of making the fraudulent transfer, and the other three hundred dollars paid to her afterwards, were proceeds from the sale of the goods of the firm of Wilson & Forrest.   If so it was not within the power of H. S. Wilson (both he and the firm being insolvent), to rightfully withdraw this money from the firm's assets and apply it to the payment of his private debt to the exclusion of the firm's creditors.   However, this matter can not be adjudicated on this interplea.   Discovering no reversible error in the record, we affirm the judgment.   All concur. ·