Freedman v. Holberg.

JACOB FREEDMAN et al., Appellants, v. L. N. HOL-
BERG et al., Respondents.

### St. Louis Court of Appeals, April 23, 1901.*

1. **Judgment, Impeachment of by Judgment Roll:** ADMISSIONS OF ATTORNEY OF RECORD: ESTOPPEL. A judgment can only be impeached by the roll itself, and when the attorneys of record agree in open court, by a solemn admission, the entry of the same on the record is conclusive, and the attempt to break the force of this estoppel of record by proving that appellants were not parties is abortive and the evidence should not be admitted.

2. ———: ———: ———: ATTACHMENT. And in the case at bar, the judgments in the several attachment suits seem to have been rendered by the consent of all parties in interest.

3. ———: ———: ———: STIPULATIONS. And, as their interests were conflicting, they were privileged to make stipulations as they saw fit.

4. **Partnership Assets:** RIGHTS OF MEMBER OF FIRM. A member of a firm has the right to have the partnership assets used to discharge its debts rather than the individual debt of some partner. Each member has a lien upon the firm's debt to that extent.

5. ———: ———: EQUITY: PRIORITY OF ATTACHMENTS: STATUTORY CONSTRUCTION. Sufficient chancery power can be exercised under the statute allowing the court to settle the questions of priority and good faith of attachments, to postpone one for another, for any sound equitable reason.

5. ———: ———: PRECEDENCE TO JUNIOR ATTACHMENT LIENS. And in the case at bar, the action of the trial court in giving precedence to the junior attachment liens, was correct.

*This case was received too late to be placed in chronological order.

Freedman v. Holberg.

Appeal from Lawrence Circuit Court.—*Hon. Henry Clay Pepper,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

In November, 1895, four attachments were run on a stock of merchandise belonging to L. N. and H. C. Holberg, partners, by the firm name of Aurora Grocery Company. The first levy was in the suit of Jacob Freedman et al., or Freedman Brothers, against the said Holbergs. Within a week there were three later levies by other creditors—Headley Grocer Company, Ernest Nathan, and Marionville Roller Mill Company. The attachments were all sustained and judgments rendered declaring liens on the property.

In the Nathan case the judgment recites as follows: "Now on this twenty-sixth day of February, 1896, it being the fifteenth judicial day of the regular February term, 1896, of the Lawrence Circuit Court, come the parties plaintiff and defendant in the above-entitled cause, the plaintiffs being represented by their attorney, E. J. White, and the defendants by their attorney, W. B. Skinner, as well as the representative of the other attachment creditors of the above-named defendants, Mr. H. H. Bloss, and all and singular the matters and issues being submitted to the court, it was stipulated and agreed by the above-named parties in open court, the defendants being then and there present and represented by their attorney and the other attachment creditors then and there agreeing, through their attorney H. H. Bloss, that the plea in abatement in the above cause should be decided in favor of the plaintiff and that the plaintiff's attachment should be sustained herein."

The action brought by Freedman Brothers was based on

a judgment which they had obtained against the defendants in the circuit court of Noxuba county, Mississippi, the twenty-fourth day of August, 1888, for a debt contracted by the defendants while they were partners in the dry goods business at Macon, Mississippi, in 1885. This litigation has dragged along for years for some unapparent cause. In December, 1889, the junior attaching creditors filed a motion to have the lien of Freedman Brothers postponed to theirs, on the ground that Freedman Brothers were not creditors of the co-partnership, the Aurora Grocery Company, but that their claim was an individual debt of the two defendants contracted years before while the defendants were engaged in another business. At the hearing of this motion some facts were stipulated by the parties; namely, that when the defendant's store was closed, they were engaged in the grocery business in the city of Aurora; that the debts of the Headley Grocer Company, Marionville Roller Mill Company, and Nathan, were contracted while the defendants were in said business at Aurora, but that Freedman Brothers' claim was contracted, as aforesaid, while the defendants were engaged in the dry goods business in Mississippi, during or prior to the year 1885. It is not shown whether that old partnership was ever dissolved and a new one constituted, or whether the Holbergs continued as partners, finally locating at Aurora and engaging in another business.

The appellants endeavored to assail the Nathan judgment as being collusive and fraudulent, and for a fictitious claim. The testimony offered for this purpose was excluded. The appellants offered the files in the Nathan attachment case for the purpose of showing they were not parties to it. The motion was sustained and Freedman Brothers' lien postponed to those of the three other attaching plaintiffs.

*C. V. Buckley* and *H. H. Bloss* for appellants.

Freedman v. Holberg.

(1) There is no law better settled than that partnership creditors have no lien on the partnership assets. Whatever rights they derive from the fact that they are partnership creditors is derived from the equities that exist between the partners themselves. Edwards & Sons v. Rosenheim, 74 Mo. App. l. c. 626; McDonald v. Cash & Hinds, 57 Mo. App. l. c. 547; Norris v. Rumsey, 54 Mo. App. 143; Tenant v. Mc-Kean, 46 Mo. App. l. c. 493; Reburn v. Mitchell, 106 Mo. 365. Our courts go still further and hold that such a conveyance made when the firm is insolvent, by all the members of the firm, is valid even though the conveyance is made for the purpose of paying an indebtedness for which only one member of the firm is liable. Sevier v. Allen, 80 Mo. App. 187; In re Edwards Estate, 122 Mo. 426. While the courts of New York have not been as rigid in holding that the partnership creditors derive their rights entirely from the equities that exist between the partners, as is the law in this State, yet they do hold the following doctrine based on almost a similar state of facts as is the case at bar, viz.: The firm property may be levied upon and sold on execution issued against all the members of the firm upon a joint obligation, not an indebtedness, of the firm to the exclusion of firm creditors. Saunders v. Reilly, 105 N. Y. 12.

*Wm. B. Skinner* and *Edw. J. White* for respondent.

(1) As to the rule—and the reasons thereof—why partnership creditors are entitled to be first paid out of partnership funds, Chancellor KENT says: "The firm creditors have the primary claim upon the joint fund in the distribution of the assets of bankrupt or insolvent partners and the partnership debts are to be first settled before any division of the funds take place. So far as the partnership property has been acquired by means of partnership debts, those debts have, in

equity, a priority of claim to be discharged; and the separate creditors are only entitled to seek payment from the surplus of the joint fund after satisfaction of the joint debts." "The very basis of the general rule is, that the funds are to be liable on which the credit was given." 3 Kent's Com. (12 Ed.), sec. 65, pp. 75, 76. (2) Since the basis of the rule is "that the funds are to be liable on which the credit was given," there can be no distinction, in principle between the separate and the joint individual debts of the members of the firm, as neither are entitled to participate in the partnership fund until payment of the partnership debts. "A promise by the individual partners, made in their individual names, respecting a matter that has no connection with the firm business, does not create a liability of the firm, as such." Forsythe v. Woods, 78 U. S. 207; s. c., 11 Wall. 484 (a case in which the two members of a firm had signed a bond, as sureties, that had no connection with their partnership business and the liability on the bond was consequently postponed until the partnership debts had been paid). (3) "The property of a firm is not holden by an attachment at the suit of a creditor founded upon the joint and several note of the members of it, and not a partnership debt." Buffon v. Seaver, 16 N. H. 160. This is also the holding in Baker's Appeal, 21 Pa. St. 76. In Dunnica v. Clinkscales, 73 Mo. 500, the same doctrine is announced and this case is on all fours with the case at bar, and has never been criticised or overruled. See also Bartlett v. Meyerschmidt Grocery Co. (Ark.), 45 S. W. 1063; s. c., 47 Cent. Law Jour. 112, where the rule laid down by KENT is applied to a similar case; Bulger v. Rosa, 119 N. Y. 465 and Hollins v. Iron Co., 150 U. S. 385; Story, Part., sec. 376.

GOODE, J.—We will first notice the assignment of error on account of excluding evidence to show Nathan's claim was

bogus. Unfortunately for the appellants, they are estopped to urge this contention by the recital of the judgment that their attorney stipulated and agreed in open court that the Nathan attachment should be sustained and judgment entered in his favor. The attempt to break the force of this estoppel of record by proving the appellants were no parties to the Nathan suit was abortive. A judgment may be impeached by the judgment roll, but in this case the roll has no such tendency. The judgment does not find the plaintiffs were parties to the action, but does find that their attorney in open court agreed Nathan might have judgment on his demand. Their counsel had full power to bind them by his solemn admissions and agreements in court, and that he did so agree, the entry is conclusive. It can only be impeached by the roll itself, which does not impeach it. The judgments in the several attachment suits seem to have been rendered by the consent of all parties in interest. As their interests in the property were conflicting, they were privileged to make stipulations to adjust them if they saw fit. For aught that is shown, plaintiffs' counsel may have been apprised of the facts concerning Nathan's demand, when he consented to the entry, in which case, undoubtedly, it was inadmissible for him to prove them afterwards in a collateral attack. Rudolf v. McDonald, 6 Neb. 163.

II. As has been indicated, the evidence is unsatisfactory about the dissolution of the Mississippi partnership, or the formation of the new one in Missouri, or whether there ever was a dissolution; but both sides treat the questions at issue as though the Aurora firm were a new one. The application to have Freedman Brothers' lien postponed was made by the defendants as well as by the other attaching creditors. A member of a firm has the right to have the partnership assets used to discharge its debts rather than the individual debt of some partner. Goddard-Peck Gro. Co. v. McCune, 122 Mo. 426; Sexton v.

Anderson, 95 Mo. 373; Hundley v. Farris, 103 Mo. 78; Julian v. Wrightsman, 73 Mo. 569. Each member has a lien upon the firm's assets to that extent. From this prerogative of the partners, the firm's creditors have derived the equity of a preference over the creditor of an individual in obtaining satisfaction of their debts from the partnership property, which is to be worked out, it is said, through the lien of the members. Sexton v. Anderson; Goddard-Peck Gro. Co. v. McCune, supra; McDonald v. Cash, 57 Mo. App. 536; Edwards v. Rosenheim, 74 Mo. App. 621; Reyburn v. Mitchell, 106 Mo. 365. It is customary to deny that the firm's creditors are per se entitled to priority; but an examination of the cases, in my opinion, will make it doubtful whether such remarks are well advised. It is true, creditors have no lien which will prevent all the partners acting in concert from appropriating the firm's property to other purposes than the payment of its debts. Sexton v. Anderson; Goddard-Peck Gro. Co. v. McCune, supra. Nevertheless, if this has not been done and the firm becomes insolvent, the superior right of its creditors is always upheld. It is sometimes said, in explanation of this fact, that they have a preference in assignments, or proceedings of a chancery nature, where the court has hold of the partnership estate for the purpose of winding it up. But this seems an unimportant observation. The right of preference is grounded in conception of justice peculiar to equity, and enforced, so far as I have discovered, whenever equity has jurisdiction or its procedure is applicable, as it usually is under the code practice and pleadings. The rules of the common law have been so modified by the percolation of equitable principles that in this, as in many other instances, they have been practically adopted. The priority of the firm's creditors was sustained against the right of the widow of a deceased member to an allowance out of the partnership assets (Julian v. Wrightsman, 73 Mo. App. 569),

and given precedence to demands presented for allowance against the estate of a deceased member. Hundley v. Farris, supra. In the last case, the opinion approves the doctrine laid down by Chancellor KENT, that "the basis of the general rule is that the funds are to be liable upon which the credit was given." The equity can be enforced in a proceeding of this kind. Sufficient chancery power can be exercised, under the statute allowing the court to settle the question of priority and good faith of attachments, to postpone one for fraud; then why not for any other sound equitable reason?

But appellants urge that their claim is one against both the defendants—a joint obligation—and, hence, as the equity of firm creditors is derived from the privilege of a member to see that the assets are first used to pay the firm debts for which he is liable and as both are liable for this debt, so that neither can have any interest in preventing it from being paid out of the common property, the reason of the rule fails. If we adhere strictly to the doctrine that the firm creditors have no superior right except on that far-fetched theory, there is much reason in this contention. But it can not be reconciled with the decisions, any more than the theory in its rigor can be. The precise point has been decided adversely to the appellant's position. Dunnica v. Clinkscales, 73 Mo. 500. In that case, the partnership of Morehead Brothers had made an assignment for the benefit of their creditors. Plaintiff presented, for allowance, notes given by the two members of the firm in settlement of a partnership business which they had previously conducted in the State of Iowa. It was held these notes ought not to be allowed against the assets of the new firm in Missouri. Similar rulings were made in Forsyth v. Woods, 78 U. S. 484; Page v. Carpenter, 10 N. H. 77; Buffun v. Seaver, 16 N. H. 160; Bartlett v. Gro. Co., 45 S. W. 1063.

It follows that the action of the trial court in giving precedence to the junior attachment liens was correct. The judgment is affirmed. All concur.