GLASGOW MILLING COMPANY, *Appellant*, v. BURNES *et al.*

### Division One, May 24, 1898.

1. **Fraud:** CHILD: PREFERRED CREDITOR. A father in failing circumstances may prefer his child, if one of his *bona fide* creditors, and this fact does not, alone, furnish evidence of fraud, but the relationship is a fact to be considered with the other circumstances.

2. **Fraudulent Conveyances:** SETTING ASIDE DEED. Where a father makes a deed to his married daughter who lives with him, she does not remember the consideration price, and says her husband paid for it with $600 he received from an unexplained estate, and with $30 at another time and $60 at another, and she gave him $75 which her husband gave her as a Christmas present, and the deed was made out, delivered to her husband and he handed it to her saying he had paid the balance, and the deed was inclosed in the family box to which the grantor alone carried the key, and was kept by him for six weeks when he bought from plaintiff goods amounting to $1,558, and a week later the deed was put of record, the evidence showing that all his other property had been previously mortgaged and at the sale did not pay the mortgage debt, and at the trial all the witnesses, being the defendants, took refuge as to many material inquiries in "I don't remember," the deed will be set aside as having been made to hinder, cheat, defraud and delay the plaintiff.

*Appeal from Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

REVERSED AND REMANDED.

*William K. James* for appellant.

(1) Plaintiff must show the deed was fraudulent —this is admitted. But all that is required to show this, is to present to a court of equity a state of facts that satisfies the judicial conscience that the conveyance was not *bona fide.* Plaintiff insists this does appear: *First.* From the transfer of $1,500 worth of property by the insolvent father to the daughter for an alleged consideration of $1,100. *Second.* From the fact that all the alleged payments were without one particle of documentary evidence. *Third.* Keeping the deed off the record when the debt of plaintiff was incurred. *Fourth.* Putting deed on record just as the crash came. *Fifth.* The most glaring contradictions of the grantee; (*a*) as to whether she ever had the deed or not; (*b*) as to whether she first received the deed and turned it over to her husband or he delivered it to her; *(c)* as to whether the mother took and kept the deed or the father who had the one key to the box containing the deed; (*d*) as to when she received the deed (if at all), whether it was about a month after the alleged payment in the summer or was before Christmas, or was during Christmas week, or was not until after its acknowledgment December 28. (2) Inadequacy of price is a badge of fraud. Bump on Fr. Conv. [3 Ed.], p. 44. (3) Another badge of fraud is that the transaction was "not of the usual course," there was "the absence of accounts between the parties when the transfer purports to be in consideration of a debt due to the grantee." *Benne v. Schnecko*, 100 Mo. 257. (4) Omission to place the deed on record is also a badge of fraud. Bump on Fr. Conv., pp. 39, 40. (5) The glaring contradictions of the testimony of the

grantee, daughter of the grantor, are of themselves the most convincing proof that the deed was not executed in good faith.

*S. S. Brown* for respondents.

MARSHALL, J.—This is a proceeding in equity to set aside a conveyance from Stephen J. Burnes and wife to Grace Sibbald, their daughter, of lots 10 and 11 of block 22 of Robidoux addition to the city of St. Joseph, Missouri, and to subject that property to the payment of a judgment for $1,558.08 in favor of the plaintiff and against Stephen J. Burnes, on the ground that the conveyance was fraudulent and intended to hinder, delay, cheat and defraud his creditors.

The evidence consists of the testimony of the grantee, Mrs. Sibbald, the grantor, Stephen J. Burnes, the notary who took the acknowledgment of the deed, and of Calvin Burns (not related to the defendants) as to the financial dealings between the grantor and the National Bank of St. Joseph and the Ayr Lawn Company, and the judgment in favor of the plaintiff against Stephen J. Burnes.

The plaintiff having called the grantor and grantee, as witnesses on the question of fraud in the conveyance, there is no conflict of testimony in the case. The facts, briefly stated are these: In 1891 Stephen J. Burnes was heavily indebted. He owned the property in dispute, which was worth $1,500. His son-in-law, the husband of Grace Sibbald, lived at his house and worked for him. The daughter claimed that her husband gave her $600 which he received from some unexplained source when he became of age that year, and she put it in her father's hands for safe keeping, intending to invest it in the stock of a building and loan association. Sometime before December 24,

1891, the exact or proximate time the parties say they "don't remember," the daughter agreed with the father to buy the property here involved, for a price which the daughter could not remember, but which she left to her father to fix, and which she says "seems to me like it was $1,100, but I could not be positive." The $600 she had deposited with her father was applied as the first payment. No time was fixed for the payment of the balance of the purchase price, and no deed was made or delivered to the land. Afterward, at a time not fixed, she paid her father $30 in cash, money which her husband had given her, and later, and "three or four weeks" after the unfixed time, she paid him $60 cash, acquired in the same way, and finally, about a week before Christmas she took the $75 her husband gave her as a Christmas present and paid it to her father on account of the purchase. On the twenty-fourth of December, 1891, Stephens J. Burnes and wife made a deed to their daughter and acknowledged it on December 28. The daughter says her husband handed her the deed, she don't know when, and told her he had paid the balance of the purchase price. She put the deed in what appears to be the common "strong box" of the family, in which all the private papers of the members of the family were kept, but the key to which was held by her father. Thus matters stood until February 3, 1892, when the father made purchases, on credit, from the plaintiff amounting to $1,558.08. On the tenth of February, 1892, the deed from the father to the daughter to the property in controversy, was placed on record. On the eleventh or twelfth of February, 1892, Stephen J. Burnes, gave a mortgage on all his other property to secure what he owed the National Bank of St. Joseph and the Ayr Lawn Company, and when sold the property did not realize enough to pay the secured debt. Burnes had other unsecured

indebtedness amounting to a large sum, but he refused to state the amount without the aid of his books, which seem to have been mysteriously mislaid. The father stated the property was worth $1,500, and the price he sold it to his daughter to be $1,100, of which his daughter paid him $600, $75, $30, and $60 at different times, his son-in-law gave him $300 in money, "and there was something between me and him that was coming to me, and we made the deed out $1,100." The plaintiff reduced its claim to judgment, levied on the property, and brought this action to set aside the conveyance. The circuit court dismissed the bill and the plaintiff appealed.

This being a proceeding in equity where the witnesses testified orally, we defer somewhat to the findings of the chancellor. *Chouteau v. Allen*, 70 Mo. 336; *Erskine v. Loewenstein*, 82 Mo. 309; *Springer v. Kleinsorge*, 83 Mo. 159; *Berry v. Hartzell*, 91 Mo, 138; *Bushong v. Taylor*, 82 Mo. 666; *Mathias v. O'Neill*, 94 Mo. 520. However, as was appropriately said by SHERWOOD, J., in *Benne v. Schnecko*, 100 Mo. *loc. cit.* 258, "but by such remarks we are not to be understood as meaning that we are concluded by the finding of facts by the court below; far from it. Such remarks do not mean that we have abdicated our supervisory control over questions of fact in equity causes; they only mean that when there is conflict of testimony, or where the testimony is evenly balanced and the finding of the chancellor appears to be correct, then we will so far defer to his finding as to sanction it by our affirmance; 'that and nothing more.'" The same rule was enunciated in *McElroy v. Maxwell*, 101 Mo. 308, and by GANTT, J., in *Ryan v. Dunlap*, 111 Mo. *loc. cit.* 618.

We are unable to discover upon what theory the learned chancellor dismissed the bill. The vague, uncertain, shuffling and evasive character of the testimony

Glasgow Milling Co. v. Burnes.

of both the grantor and grantee, their frequent resort to the facile excuse, "I don't remember," when interrogated about the vital points involved; the improbable circumstances attending the pretended sale of the property; the utter confusion as to the time and terms of sale and the dates of payment; the custody of the deed from December 28, 1891, to February 10, 1892; the neglect to record the deed until ten days after the debt to the plaintiff was created, and the failure of the father the next day after the deed was put on record, are all unerring signboards pointing to a fraudulent purpose to hinder, delay and defraud his creditors, contrived by the grantor and participated in and attempted to be effectuated by the grantee. "Honest transfers do not commonly occur in this way." *Benne v. Schnecko*, *supra*.

The burden of proving fraud is always upon the party alleging it. *State ex rel. v. Hope*, 102 Mo. 410. A father when in failing circumstances may honestly prefer his child, if one of his *bona fide* creditors, and this fact does not, of itself, furnish evidence of fraud, but the relationship is a fact to be considered with the other circumstances. *Van Raalte v. Harrington*, 101 Mo. *loc. cit.* 608. In this case, when coupled with the circumstances surrounding the transaction and the manner of testifying of both parties to the deed, they lead to but one logical conclusion—a purpose by the grantor to cover up his property and to save this much from the wreck of his fortunes, and a participation in this purpose by the grantee, which is fraud in law.

The decree of the circuit court is reversed and the cause remanded for further trial in conformity herewith. All concur except ROBINSON, J., who dissents.