THIRD NATIONAL BANK of Sedalia, Appellant, v. A. B. CRAMER, Respondent.

**Kansas City Court of Appeals, February 6, 1899.**

1. **Attachment:** FRAUDULENT CONVEYANCE: EVIDENCE: PREFERRING WIFE'S DEBT. The evidence in this case is reviewed and held insufficient to sustain an attachment for fraudulent conveyance of the defendant's property, since he had a right to prefer his wife's debt and there was no evidence showing an insufficiency of property to pay all his debts, and the plaintiff must be held to prove the fraud he alleges.

2. ————: FRAUDULENTLY CONTRACTED DEBT. Where a plaintiff grounds his attachment on the fact that the debt was fraudulently contracted and offers in evidence a statement made by the defendant at the time of the contraction of the debt, he must show such statement to be untrue in some material matter.

3. ————: DEBT PARTLY CONTRACTED IN FRAUD, PARTLY NOT. Where an attachment is grounded on the fact that the debt is fraudulently contracted and the evidence shows that a part of it was contracted before the alleged fraud and the other part in consequence thereof, the attachment can not be sustained even though renewal notes were made for the antecedent debt after the fraud.

*Appeal from the Pettis Circuit Court.*—HON. G. F. LONGAN, Judge.

AFFIRMED.

BARNETT & BARNETT for appellant.

(1)   If there are any inferences which can be drawn from the facts proven, or where there is some evidence, however slight, tending to establish the facts necessary to a recovery, the evidence should be submitted to the jury. Higgins v. Railway, 43 Mo. App. 547; Bender v. Railroad, 137 Mo. 240; Chamberlin v. Smith's Adm'r, 1 Mo. 482; Speed v. Herrin, 4 Mo. 356; Robbins v. Ins. Co., 12 Mo. 380; Winston v. Wales, 13 Mo. 569; McKown v. Craig, 39 Mo. 156; Singleton v. Railway, 41 Mo. 465; Deere v. Plant, 42 Mo.

60. (2) The fact that the wife and other relatives were made preferred creditors and that their claims were more than sufficient to exhaust the entire property conveyed, and that the debts due to other creditors, although pretended to be secured, yet are so arranged in said trust deed as to render it impossible for anything to be paid thereon, taken in connection with the fact that defendant had made a false statement as to what debts he owed, is sufficient evidence of fraud to authorize the submission of the case to the jury on the ground that "defendant had fraudulently disposed of his property and effects so as to hinder and delay his creditors." Riley v. Vaughan, 116 Mo. 177. (3) It appears from the recitals of the deed of trust itself that the wife in this case had given her husband unlimited control over her money and permitted him to use it in his business for a series of years. In such a case she will not be permitted, when he is in failing circumstances, to withdraw it from the just claims of creditors who, in good faith, gave the husband credit, relying on his ownership. Riley v. Vaughan, 116 Mo. 169; Holloway v. Holloway, 103 Mo. 277. (4) While a debtor has a right to prefer his relatives among creditors, yet the fact of such' relationship is one to be considered by the jury in connection with other circumstances on the question of intent to defraud his creditors. Van Raalte v. Harrington, 101 Mo. 602; Milling Co. v. Burnes, 144 Mo. 192; Implement Co. v. Ritchie, 143 Mo. 587; Robinson v. Dryden, 118 Mo. 534; Farwell v. Meyer, 67 Mo. App. 566. (5) There was sufficient evidence to go to the jury on the question as to whether the debt was fraudulently contracted. Blackwell v. Fry, 49 Mo. App. 638. (6) It is true that at the time of the written false statement as to defendant's circumstances on January 13, 1895, only a part of the debt sued for was contracted, yet the fact of this false statement being made for the purpose of obtaining further credit, and the subsequent placing his property out of his hands to secure alleged indebtedness, the

existence of which he had previously concealed, if such indebtedness really existed, taken in connection with all the circumstances in this case, are sufficient to authorize the jury in finding that the entire indebtedness was contracted with the preconceived intention of not paying same.

SANGREE & LAMM and JAMES W. BOYD for respondent.

(1) There was no evidence tending in the least degree to prove that respondent had fraudulently conveyed or assigned his property, or that he was about fraudulently to convey or assign his property so as to hinder or delay his creditors. (2) There was no evidence to show that the debt sued for, $2,200, was fraudulently contracted. (3) A statement made long after the debt was contracted, long after the money was loaned, and long after the notes given for the money were executed, can not be considered as evidence that the debt was fraudulently contracted, even though the statement was made before the notes were renewed the second time. Bank v. Swan, 23 Pac. Rep. 743-749; Myer v. Bingol, 25 N. W. Rep. 727, 18 Neb. 458. The renewal of a note is not the contraction of the debt. (4) Where it is charged in the affidavit that two debts were fraudulently contracted, and the two debts make up the amount sworn to, and it is developed, shown or admitted that one of these debts was not faudulently contracted, the attachment must be dissolved. Drug Co. v. Drug Co., 40 Pac. Rep. 979; Meyer v. Zingre, 25 N. W. Rep. 727; 18 Neb. 458; Estlow v. Hanna, 75 Mich. 219; Stiff v. Fisher, 21 S. W. Rep. 291; Bank v. Swan, 23 Pac. Rep. 743. (5) This proposition was at the trial conceded to be the law. The appellant can not now be heard to present a different theory of the law. Johnson-Brinkman v. Bank, 116 Mo. 558; Herman v. Owen, 42 Mo. App. 387; Hardwick v. Cox, 50 Mo. App. 509; Noyes v. Cunningham, 51 Mo. App. 194; Crabtree v. Vanhoozier, 53 Mo. App. 405; Harper v. Morse, 114 Mo. 317; Gregory v. Sitlington, 54 Mo. App. 60.

GILL, J.—This is an appeal from a judgment dissolving an attachment. Plaintiff's affidavit upon which the attachment writ was issued, set out three grounds, the first and second charging that defendant had, or was about to convey or assign his property so as to hinder and delay his creditors, and the third "that the debt sued for was fraudulently contracted on the part of the debtor." Defendant filed a plea in abatement, putting in issue the allegations of the affidavit, and upon a trial thereof, and at the close of plaintiff's evidence, the court gave a peremptory instruction to find for defendant. The propriety of this action of the court is the question now here for review.

We have carefully gone over the entire evidence contained in the record, and in the light of the authorities, find no cause for disturbing the judgment. The plaintiff failed to make a case for the jury on either of the grounds set out in the affidavit. If plaintiff had any cause whatever for the attachment, it was either that defendant had fraudulently conveyed his property so as to hinder or delay his creditors, or had fraudulently contracted the debt sued for; there is no pretense that defendant was about to fraudulently convey or assign his property. To establish the first charge, this was the substance of the evidence adduced at the trial: Defendant was a merchant, having one store at Sedalia and one at St. Joseph. On August 3, 1896, he executed a deed of trust, naming one Buechle as trustee, conveying all his goods, accounts, etc., for the benefit of a large number of his creditors, and among them this plaintiff for the four notes here sued on aggregating $2,200. By the terms of the deed of trust, Buechle, the trustee, was to take possession of and sell the goods at public or private sale and collect outstanding claims, and out of the proceeds pay the creditors according to a classification there set out. The first to be paid were taxes and costs of executing the

ATTACHMENT: fraudulent conveyances; evidence: preferring wife's debt.

trust; second, unpaid salaries of employees; third to Harriet S. Cramer, defendant's wife, the amount due and owing her for money borrowed, as follows: $2,923.63 on August 9, 1886, and $3,300 on April 23, 1894—reciting in the deed of trust that "no part of said sums have ever been paid her, although said party of the first part promised when he received said money and frequently since, to repay her, and this said claim is hereby made a third class claim." In the fourth class was placed a note in favor of Alex. Cramer; in the fifth class were placed the claim of this plaintiff for $2,200 and that of a bank at St. Joseph for about $1,400; and in the sixth class a large number of other creditors in amounts mentioned. The evidence shows that the trustee took open and notorious possession of the goods, evidences of debt, etc., began and continued the sale of goods at both stores (at Sedalia and St. Joseph) for about a year before this suit was brought. And it seems, when this attachment was instituted the goods remaining had been consolidated at Sedalia and the trustee had advertised the same to be closed out at auction.

There was not a particle of evidence introduced tending to impeach the good faith and validity of the above named deed of trust, nor indeed tending to prove that any of the debts thereby secured were fraudulent or fictitious. All that can be said in that respect is that the maker of the deed of trust named his wife as a secured creditor to the amount of about $6,200. Neither was there any evidence to show the value of the property conveyed to the trustee, nor what amount he had realized from the sale thereof; and it therefore did not appear whether or not the trustee would have sufficient to pay off and satisfy every debt provided for, including that of this plaintiff.

It seems then to us, that the court was justified in the holding that there was no evidence tending to prove a fraudulent conveyance. The mere fact that one of the parties

secured was the wife of defendant could not, of itself, establish the invalidity of her claim, and if this was even so it could not render the deed of trust illegal or void as to the other creditors therein provided for.    Robinson v. Dryden, 118 Mo. 534; Milling Co. v. Burnes, 144 Mo. 192; Woodson v. Carson, 135 Mo. 521.    If the defendant was justly indebted to his wife (and as to this the evidence is all in the affirmative) then the law is well settled that he had the right to make such a conveyance as would prefer her claim over others.    But, as already stated, there was no evidence to show that there was not sufficient property conveyed by the deed of trust to satisfy all the debts of the defendant.    The burden of proving a fraudulent conveyance rested on the plaintiff; fraud will not be presumed but must be affirmatively established by him who alleges it.

II.    The remaining question is, was the plaintiff entitled to go to the jury on the allegation contained in the affidavit that the debt sued for was fraudulently contracted on the part of the defendant.    In support of this allegation plaintiff relies on the following written statement made by defendant, January 15, 1895, as to his financial condition at that time, and upon the faith of which plaintiff's officers testify that they loaned defendant a portion of the money now sued for:

——: fraudulently contracted debt.

"Sedalia, Mo., Jan. 15, 1895.

| | |
|---|---:|
| Mdse. on hand, about | $12,000.00 |
| Book accounts | 1,650.00 |
| | $13,650.00 |
| Mdse. liabilities | 3,363.25 |
| | $10,287.00 |

A. B. Cramer."

Of the four notes sued on, two (one for $1,000 and one of the $500 notes) are remote renewals of notes for the same amounts given the year previous to the above statement, and for money borrowed at such times. So then, the other two notes (of $500 and $200 respectively) are the only ones representing loans made by plaintiff to defendant at and subsequent to the signing of the above quoted written statement. The evidence tends to prove that plaintiff agreed to, and did loan the $700 (evidenced by the last two notes above mentioned) relying on the correctness of the aforesaid written statement made by defendant. But plaintiff's case is deficient in that it was not shown that such statement was false at the time. The statement taken literally, is, that on January 15, 1895, defendant had on hand about $12,000 in merchandise, and was at the time indebted for merchandise in the sum of $3,363.25. Plaintiff introduced no evidence at the trial tending to prove either of these matters to have been untrue at the time. It is clear that the burden of so showing was on the plaintiff.

But plaintiff's last ground of attachment fails for another reason. The statute allows the plaintiff to attach "when the debt sued for was fraudulently contracted on the part of the debtor." There is no pretense here that the $1,500 which defendant borrowed of plaintiff in August and October, 1894 (and for which a note of $1,000 and one for $500 were given) were procured by any fraudulent representations of the defendant. The written statement forming the basis of this ground for attachment was not made and signed until long after said loans in 1894. Such statement then as to defendant's financial standing in January, 1895, could not enter into or induce the credits extended in the preceding year. Conceding then that the two loans made at and subsequent to January 15, 1895, may have been fraudulently procured through a false statement of assets and liabilities

——: debt partly contracted in fraud; partly not.

then signed by defendant, will the plaintiff be permitted to attach, not only for the loans so made on the faith of such false statement, but as well for other loans made long prior thereto and of course in no way induced by such fraudulent statement? This is denied, it seems, by every court where the question has arisen. Estlow v. Hanna, 75 Mich. 219; Mayer v. Zingre, 18 Neb. 458; Stiff v. Fisher, 85 Tex. 556; s. c., 2 Tex. Civ. App. —; C. D. Smith Drug Co. v. Drug Co., 40 Pac. Rep. 979; Wilson v. Harvey, 52 How. Pr. 126. And the rule was so recognized by us in Mackey v. Hyatt, 42 Mo. App. 443. The reasoning of the Michigan court in Estlow v. Hanna, *supra,* is so conclusive that we here quote from the opinion and adopt the language as our own:

"Here the suit was brought to recover the money paid by plaintiff for defendant, upon three promissory notes. The debt as to two of them was not fraudulently contracted yet the lien created upon the property of defendant included the amount of these two notes as well as the amount so fraudulently contracted. The amount of these two notes the plaintiff had no right to include in his lien, which was no part of the debt fraudulently contracted within the meaning of this statute. He had no right to have his writ for these amounts, or to have a lien upon the property of the defendant therefor.

"If this writ had been levied upon personal property, the defendant, or any person in whose possession the same was found, would have had the right to give a bond to the officer to satisfy the judgment, and retain possession. This bond the officer may demand to be in double the amount specified in the affidavit before releasing the property, and under plaintiff's contention, though but $100 of the amount was fraudulently contracted, yet the defendant before he could get his property released, would be compelled to give a bond for the entire amount of the debt sworn to be due.

"Again, one having a claim covered by this subdivision of the statute, might under the construction contended for, have attached thereto any number of assigned claims, and obtain a lien upon the property of the debtor for the whole sum.

"We can not agree with any such harsh construction of this statute. The remedy itself is a harsh and extraordinary one, proper only when it comes within the plain provisions of the statute, but the statute should not be extended by construction. We are cited to no case by counsel, which upholds the doctrine for which they contend and we are satisfied upon principle none can be found. On the contrary, wherever this question has come before the courts of other states it has uniformly been held that attachments will not be upheld where a complaint or affidavit sets forth several causes of action, some of which are without the statute."

It matters nothing that the two notes in suit evidencing the $1,500 of the aggregate sued on, were in fact executed after the alleged false and fraudulent statement was made. Said notes were only renewals of originals executed when the money was obtained, and this was prior to such representations. The debt was contracted when the money was borrowed, and the statute only has to do with whether or not it was then "fraudulently contracted." The note first executed was but the contemporaneous evidence of the obligation first incurred, and the note renewed only a substituted memorial of the original transaction. Bank v. Swan, 3 Wyo. 356.

In our opinion the court correctly sustained a demurrer to the plaintiff's evidence and its judgment must be affirmed. All concur.