LEONARD MONK, Appellant and Respondent, v. WABASH RAILROAD COMPANY, Respondent and Appellant.

Kansas City Court of Appeals. November 11, 1912.

RAILROADS: Negligence: Personal Injury: Question for Jury. Plaintiff, a section man, was sent by his foreman down the railroad track at night to flag an approaching passenger train at a dangerous place on the track. A slow order had limited speed of trains over such track to five miles an hour. Plaintiff testified that when the train approached, he was standing in the position he had been ordered to take, and that he gave the slow signal, but receiving no response, remained on the

Monk v. Railroad.

track, repeating the signal, until too late to escape injury because of the speed of the train. The train approached on a straight track, at night, and plaintiff testified that it was impossible to judge its speed. There was evidence showing the train was running at a speed much greater than that limited by the slow order. *Held*, in an action for damages for such injury that there was sufficient evidence to make a question for the jury, and that a demurrer to the evidence was improperly sustained.

### On Motion to Modify.

1. **ATTORNEY: Agreement: Authority.** An attorney for defendant has implied authority in the conduct of a trial for his client, to agree that at the close of the evidence he will present a demurrer thereto, which, if sustained by the court, judgment shall be rendered for defendant; but that if the demurrer is refused, the findings and judgment shall be in favor of plaintiff for $5000, the losing party retaining a right to appeal.

2. **JUDGMENT: Verity: Judge's Docket: Clerk's Minutes.** The recorded judgment of a court of record imports absolute verity unless contradicted by other parts of the record. And such judgment may properly recite agreements of parties not contradicted by the judge's docket or the clerk's minutes, though such agreements are not mentioned in such docket or minutes.

3. **JUDGMENT: Appellate Court: Assumption: Remedy.** If a recorded judgment of the trial court recites an agreement of the parties which is made by the attorneys in the cause, an appellate court will assume that the court found the attorneys had authority to make the agreement. An appellate court cannot inquire into the authority of such attorneys. The proper remedy is by proper proceedings in the proper court against the judgment.

### Case No. 10384. On Supplemental Proceedings.

1. **NUNC PRO TUNC: Judgment Entered: Presumption: Evidence.** A judgment entered in the judgment record is presumptively the judgment rendered by the court, and to correct it by proceedings *nunc pro tunc*, after the term, oral evidence is not admissible. The only competent evidence is from the judge's docket or the clerk's minutes or other record in the cause showing that a different judgment was rendered.

2. ———: ———: ———: **Judge's Docket: Clerk's Minutes: Silence.** If reliance is placed on the judge's docket and clerk's minutes to correct a judgment, *nunc pro tunc*, they, to authorize the correction, must show that the judgment entered is not

the one which the court rendered. The mere silence of the docket and the minutes as to a part of the judgment entered on the record, is not sufficient to authorize that portion to be stricken from the judgment.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

Two CASES. No. 10384 REVERSED AND REMANDED (*with directions*). No. 10182 AFFIRMED.

*J. L. Minnis* and *Higbee & Mills* for appellant and respondent.

*Campbell & Ellison* and *Weatherby & Frank* for respondent and appellant.

ELLISON, J.—Plaintiff was an employee of the defendant railway as a section man under the immediate direction of a foreman. He was seriously injured, and, charging the injury to the negligence of defendant's servants, brought this action for damages. The trial court sustained a demurrer to the evidence and rendered judgment for the defendant, whereupon plaintiff appealed.

It appears from the record that there had been a former trial of the cause, in which plaintiff obtained a verdict for ten thousand dollars. A motion for new trial filed by defendant was sustained for the following reasons:

"First: Because the court is of the opinion that it erred in not sustaining defendant's demurrer tendered at the close of plaintiff's case.

"Second: Because the court is of the opinion the verdict is the result of perjury on the part of plaintiff in that he swore he was on his feet giving the slow signal from the time the train came in sight, when the great preponderance of the testimony introduced by plaintiff satisfies the mind of the court there was no signal given."

Plaintiff prepared his bill of exceptions, which was duly signed by the judge and filed. Afterwards it was agreed between the parties that there should be a new trial by the court without a jury and the evidence should be that taken on the former trial as preserved in the bill of exceptions. That bill of exceptions was submitted to the court by the parties and defendant offered, and the court gave, a peremptory instruction declaring "that under the pleadings and evidence the plaintiff cannot recover." Judgment was then entered for defendant and plaintiff appealed to this court.

It is a fundamental rule that in passing on a demurrer to the evidence we must assume the truth of the testimony in behalf of the defeated party and allow all reasonable inferences which may be drawn therefrom in his favor. It is from that standpoint we must consider the case. [Knorpp v. Wagner, 195 Mo. 637; Pauck v. St. Louis Beef & Prov. Co., 159 Mo. 467; Wilson v. Board, 63 Mo. 137.]

It is admitted by defendant that plaintiff was in its employment as a section man and that on the night of his injury he was sent by his foreman before nine o'clock at night, to a bad or dangerous place on the track near a bridge about 200 feet long, to signal trains, a passenger train being due at that hour. It is conceded that he took with him a lantern and a raincoat. It is likewise conceded that he was injured by being run over by defendant's train and his arm cut off, besides other injuries of less consequence. Plaintiff charges negligence on the part of defendant's servants in charge of the train, and denies contributory negligence. Defendant's theory of the cause of his injury is that he was asleep on the track with his coat for a pillow. This theory is not said to be supported by any direct evidence, but is in the nature of a conclusion drawn by counsel as the most reasonable way

to account for the injury conceded to have been inflicted.

The bad track was at the north end of a bridge, about three-fourths of a mile north of the town of Greentop, in Schuyler county, and was caused by the embankment having slipped to such an extent as to make necessary great care and caution in trains passing over it; and that was the cause of plaintiff being sent to stand at the place and signal an on-coming train. On account of rains the condition had existed for some little time and train crews had first been ordered to slow down to ten miles an hour when passing over it, but afterwards that order was changed to five miles. Notwithstanding the order, it was deemed prudent to station a man at the place to signal night trains.

Plaintiff testified that he was directed to take his position at the north end of the bridge; that he could have signalled by standing 150 feet north of the bridge, but his orders were to take position at the end of the bridge. Asked on cross-examination if he could not have signalled from the south end of the bridge, he answered: "Yes, I could if the boss had put me there." Literal compliance with the order would put him on the track. But, aside from that, the condition there made it necessary that he place himself on the track, for the embankment had slid off on one side up to the end of the ties and the slope on the other side was such as to make it impractical to stand off of the track. He testified that when the train came around a curve, the track was straight and he gave the engineer the slow signal by slowly raising his lantern up and down. It was the duty of the engineer to answer or respond to the signal by two sharp blasts of the whistle, but he did not do so and plaintiff continued at his place signalling. He stated that at night, looking straight down the track into the headlight of an approaching engine, one can-

not tell whether it is coming fast or slow, and that he did not know it was going at a rapid rate until it struck the south end of the bridge, when the rumble or noise, such as is made on a bridge, warned him of his danger, and he immediately attempted to get off the track, when he slipped and fell between the rails and quickly endeavored to throw himself outside by turning over the west rail, but before he was completely outside, the wheel of the engine caught his arm and cut it off. As we have said, plaintiff testified he could not tell by looking straight down the track that the train was running rapidly, but supposed it would be coming slow as the orders were to run slow, but he further stated the reason he remained on the track was that up to the time the engine came upon the south end of the bridge and made the rumbling noise, he "kept thinking that he (the engineer) would answer" the signal.

Plaintiff walked to the nearest house and was afterwards taken to a hospital. Persons who soon heard of the injury went immediately to the place. Plaintiff's overcoat was found eight or ten feet north of the bridge his cap six or eight feet north of the coat, and the lantern at the north end, while his severed hand and elbow were found about thirty-five feet north of the coat, one between the rails and the other outside.

The judgment of witnesses for plaintiff differed as to the speed of the train. Plaintiff himself stated that he thought it came upon him at fifteen or twenty miles an hour. Other witnesses put it much faster and yet the conductor of the train (introduced by plaintiff) said it was about five miles; and so the engineer and fireman stated. There was evidence that the ordinary rate of speed at that place, when the track was in condition, was fifty or sixty miles an hour, and witnesses who observed this train that night from their houses said it was running at its usual rapid rate until it got

as far as the middle of the bridge when it seemed to slacken.

We think it clear it should not have been said, as a matter of law, that no case was made for plaintiff. As already stated, we must accept the testimony in his behalf, including his own, as true. From that standpoint, he was standing in obedience to defendant's order, at the north end of the bridge where there was a dangerous place in the embankment of the track made by recent rains, with directions to notify the train by signal to slow down the speed to five miles an hour. The engineer of the train himself had this order, but it was a wise precaution to also have a flagman at the place, that no mistake could lead to serious disaster. He saw the approaching train down a straight track, near a quarter of a mile from the bridge, and began to give the proper signal by moving his lantern up and down. It was the duty of the engineer to notify him that he saw the signal by two short blasts of the whistle, and he did not do so, which neglect caused plaintiff to remain at his post continuing the signal. The question may suggest itself as to just when plaintiff, as a prudent man, should have ceased giving the signal which he knew was unanswered, and leave the track. We think he gives reasonable account of his conduct, certainly good enough to be passed upon as a question of fact. He could not tell by looking down the track into the headlight of the engine, that it was coming at a greater rate of speed than five miles an hour, the rate named in the slow order, and he could reasonably suppose it was not; at least he was entitled to have the character of his action, in all the circumstances, passed upon as a matter of fact. He was only made to realize that the train was approaching at a rapid rate, as it got upon the bridge, when he immediately endeavored, to save himself by clearing the track, when he unfortunately fell and was struck before he could roll entirely over the rail. There was evidence that the engineer

had been over the track, knew its condition and expected a flagman to be there. It was therefore great carelessness in him to run at the speed stated by plaintiff and other witnesses. There is every reasonable inference that but for such speed plaintiff could have fully cleared the track.

Turning to the action and conduct of defendant's train servants, we find (from the standpoint of the evidence for plaintiff) that instead of a speed of five miles an hour they were negligently running at a rapid rate. The engineer and fireman testified that they were carefully and steadily looking ahead and that they did not see a signal, nor did they see plaintiff. Yet they were looking so carefully that the fireman saw what he took to be a coat and a dinner pail by the side of the track. The patent and indisputable fact that plaintiff was on the track and was run upon by the train, not only neutralizes that evidence, but it establishes affirmatively that they saw him or else were not looking. (Ellis v. Met. St. Ry. Co., 234 Mo. 657, 673; Lynch v. Ry. Co., 208 Mo. 1, 24.) It has been several times ruled by the supreme and appellate courts that testimony of a witness, with normal eyesight, who is looking in the direction of an object in plain view, that he did not see such object, should not be accepted as the truth.

We think it apparent that there was evidence tending to prove, or from which a reasonable inference could be drawn, that defendant's servants were running the train at a rate of speed somewhere between fifteen or twenty miles per hour and fifty or sixty miles, in approaching a place where they were expected to run five miles; that they saw plaintiff and his signal and made no response; that they negligently ran upon him, inflicting the injury stated.

Defendant's entire argument against the appeal is really a concession that there was an issue made by the evidence in plaintiff's behalf. Inferences are

drawn, conclusions stated and much forcible matter suggested which may well be dwelt upon in debating the issues, but they have no effect as an argument that there *were no* issues.

According to the recitation in the record before us, the parties not only agreed that the new trial should be before the judge without a jury, but also that in case defendant's demurrer to the evidence should be overruled, that the court should then render judgment for plaintiff for five thousand dollars, that being one-half the verdict of the jury in the first trial. In view of this record plaintiff asks that the cause be remanded with directions to the circuit court to enter judgment for him for that sum.

Defendant insists that the agreement thus set out in the record of the judgment, is incorrect in so far as it authorizes a judgment for plaintiff if the defendant's demurrer should be overruled; and claims that the agreement was that if the defendant's demurrer to the evidence was overruled and the court should find for plaintiff, then the amount of the damages should be $5000.

This phase of the case has not been briefed by counsel and we have concluded to remit the question to the trial court, so that if the defendant is found to be bound by the agreement set forth in the record, judgment may be entered in accordance therewith; and if it be found not to be a binding agreement, that the cause stand for trial.

Reversed and remanded. All concur.

## ON MOTION TO MODIFY.

The only question which has given us any concern is plaintiff's motion to modify the opinion and direct a judgment to be entered in compliance with the agreement contained in the judgment of the trial court.

The judgment rendered by the trial court on the trial of this cause is as follows:—

"Now on this day this cause coming on for trial and both plaintiff and defendant appear and answer ready for trial, and jury is waived and cause submitted to the court upon the following agreement of the parties hereto, to-wit: Plaintiff shall offer and introduce in evidence all of the evidence introduced in his behalf at the former trial of this cause, and which is preserved in the bill of exceptions heretofore filed in this cause, and thereupon the defendant shall offer and introduce in evidence all the evidence introduced in its behalf at the former trial of this cause, and which is preserved in the bill of exceptions aforesaid, and thereupon the defendant shall request the court to give a declaration of law to the effect that under the pleadings and evidence the plaintiff cannot recover and the finding and judgment must be for the defendant. If the court give said declaration of law, judgment shall be rendered for the defendant. If the court refuse to give said declaration of law, the finding shall be in favor of plaintiff, and his damages assessed at the sum of $5000, and judgment rendered in accordance therewith. The losing party shall have the right to appeal from said judgment. And thereupon the trial progressed, and the plaintiff, to sustain the issues in his behalf, introduced in evidence all of the evidence, preserved in the aforesaid bill of exceptions, which was introduced in his behalf at the former trial of this cause, and thereupon the defendant, to sustain the issues, in its behalf, introduced in evidence all of the evidence, preserved in the aforesaid bill of exceptions, which was introduced in its behalf at the former trial of this cause, and thereupon both parties rested," and the court sustained such declaration of law.

Defendant admits an agreement was made, but denies that it contained the following clause now appearing in the judgment, viz: "If the court refuses to

give the said declaration, the finding shall be in favor of the plaintiff and judgment rendered in accordance therewith." Defendant states that the agreement was this: "It is agreed by counsel, the court should try the case on the evidence contained in the bill of exceptions, and if the finding should be for plaintiff the damages should be assessed at $5000. But it was not agreed if a demurrer to the evidence should be overruled that judgment should go for plaintiff." It is then stated by defendant that "there is at least a misunderstanding that will be brought to the attention of the lower court at its next session by motion to correct the judgment *nunc pro tunc*. That need not, however, delay the hearing of this appeal." Since then defendant did institute a *nunc pro tunc* proceeding to correct the judgment by striking out the agreement therein. This was heard by the circuit court and the result was a refusal to correct the judgment. Defendant took what is designated, a supplementary appeal to this court and we have at this term affirmed the action of the trial court. See opinion below.

We must accept the recorded judgment as absolute verity unless other parts of the record show that cannot be done. In this connection defendant insists that other parts of the record nullify the entry of the agreement; that is, the entry of disposition of the case on the judge's docket does not authorize an entry of the agreement in the judgment. The judge's entry is: "Jury waived, tried to the court, verdict for defendant on the whole case on demurrer tendered by defendant." It is claimed, and not disputed by plaintiff, that the same entry was made by the clerk on his minutes. But these are not incompatible with the judgment actually entered. It must be presumed, unless contradicted by the record, that the judgment entered is the judgment rendered. [Railroad v. Holschlag, 144 Mo. 253; Wooldridge v. Quinn, 70 Mo. 370; Jones v. Hart, 60 Mo. 351.] It has been so decided by this court in the recent case of

Kreisel v. Snavely, 135 Mo. App. 155. And by the St. Louis Court of Appeals in Freedman v. Holberg, 89 Mo. App. 340. In Jones v. Hart, supra, in stating that the judgment entered must be taken to be the judgment of the court, the Supreme Court said that the judgment did not need the judge's docket or the clerk's minutes as vouchers for its authenticity.

But defendant insists that conceding the agreement was made, it was entered into by its attorney without authority from it, and that the agreement was such an act as was not within the implied authority of an attorney in a cause. It has been held in this State that an attorney, by his general authority as such, may agree that the result in one cause shall abide the result in another, the plaintiff being the same. [Railroad v. Stephens, 36 Mo. 150.] That the opposite party may take judgment on a verdict then rendered against his client. [Barlow v. Steele, 65 Mo. 611.] And that he may dismiss his client's action. [Davis v. Hall, 90 Mo. 659.] And that if there is any abuse of the authority, the remedy is against him. "An agreement (by an attorney) relating to the conduct of a suit and its proceedings during the trial, in open court and entered upon the record, will conclude the parties." [McCann v. McLennan, 3 Neb. 25; Staples v. Parker, 41 Barb. 648.] In some jurisdictions it is held that he has power to confess judgment. [Thompson v. Pershing, 86 Ind. 303; Williams v. Simmons, 79 Ga. 649, 655.]

In our opinion it was within the implied authority of the attorneys to make the contract recited in the judgment. But whether that is a correct view of the law would make no difference in the result in this case. For it is well settled that having been set out in the record of the judgment as an agreement of the parties to the cause, if, in fact, made by the attorneys, for their respective principals, we must assume the court found they were authorized to do it. [Railroad v. Ketchum, 101 U. S. 289, 296; Cyphert v. McClune, 22 Pa. St. 195;

Denton v. Noyes, 6 Johns. 296; Talbot v. McGee, 20 Ky. 375, 377.] In the first of these cases the Chief Justice said that: "A solicitor may certainly consent to whatever his client authorizes and in this case it distinctly appears of record that the company assented through its solicitor. This is equivalent to a direct finding by the court as a fact that the solicitor had authority to do what he did, and binds us on an appeal so far as the question is one of fact only. The remedy for the fraud or unauthorized conduct of a solicitor, or the officers of the corporation, in such a matter, is by an appropriate proceeding in the court where the consent.was received and acted on, and in which proof may be taken and the facts ascertained. We take a case on appeal as it comes to us in the record, and receive no new evidence." In the case last cited the court said: "That the attorney who made the admission was not Talbot's attorney, is a question of fact which does not arise out of the record and proceedings in the court below. This court cannot originate an inquiry whether the attorney representing Talbot in the court below, was or was not authorized to appear as his attorney." It is apparent that an appellate court cannot stop to enter upon an inquiry as to the authority to enter a judgment which is found to be regularly, and so far as appears, properly entered in the record. It is wholly impracticable, and to do so would introduce great confusion and disorder in the administration of appellate functions.

Our conclusion is to modify the foregoing opinion by withdrawing the last paragraph and substituting therefor that the trial court be directed to enter judgment for plaintiff for $5000 in accordance with the agreement.

## PROCEEDING IN CASE NO. 10182.

Plaintiff was injured by being run over by one of defendant's engines, whereby one of his arms was sev-

·ered from his body. He charged defendant with negli-
gence and brought his action against it for damages
and upon trial obtained a verdict for ten thousand dol-
lars. On motion of the defendant for a new trial, the
trial court set the verdict aside for the reason, among
others, because it believed that plaintiff had committed
perjury. Plaintiff, preparatory to an appeal, took a
bill of exceptions signed by the judge. It was then
agreed by the parties that the cause should be submit-
ted for another trial to the judge (a jury being waived)
on the evidence of each party as set out in the bill of
exceptions, and that defendant should present a demur-
rer to the whole evidence upon which, if sustained by
the court, judgment should be rendered for defendant.
The parties disagree as to what the judgment should
be if the demurrer was overruled. Plaintiff contends
that if overruled the finding and judgment should be
for him for $5000. The defendant insists that the agree-
ment was that if the demurrer was overruled *and* the
court found for plaintiff, the amount of the finding and
judgment would be $5000. It was agreed that the los-
ing party had the right to appeal.

The court heard the case and the defendant pre-
sented a demurrer as agreed. The court sustained the
demurrer and made the following notation on his doc-
ket: "Jury waived, tried by the court, verdict for de-
fendant on the whole case on demurrer tendered by de-
fendant." The clerk's minute book contained the same
entry. The judgment entered upon the judgment re-
cord recited the agreement as plaintiff understands it.
It will be found above in our opinion on the motion to
modify.

After the trial as just described, the plaintiff duly
appealed to this court and we reversed the judgment
and remanded the cause, holding that the evidence
made issues of fact as to whether plaintiff should re-
cover upon which the trial court should have passed;

166 Mo. App.—45

and that it was error for the court to rule that the evidence, as a matter of law, failed to make a case. On that appeal defendant denied the correctness of the judgment as entered of record in reciting, the agreement, contending that it was as it now insists, and stated that it would proceed in the trial court for a *nunc pro tunc* order correcting the judgment, but stated that that need not prevent this court from going on with a determination of the case as appealed.

Afterwards defendant did institute a proceeding in the trial court for *nunc pro tunc* order correcting the judgment by striking out the words reciting as the agreement that if the court refused a demurrer to the evidence, the finding and judgment should be for plaintiff for $5000; and that the judgment be made "to conform to the facts in the case."

A trial was had of this motion. Defendant introduced the judge's docket and the clerk's minutes. The clerk of the court testified that the judgment entered in the record was written from a form or draft furnished to him by Mr. Weatherby, one of plaintiff's attorneys, of the firm of Weatherby & Frank. That this form was brought to him by Mr. Weatherby after the trial in November, and that he placed it in his desk "to be entered in due course," and that he did enter it in February. He further testified that the draft or form was not endorsed as correct by the judge or defendant's attorneys.

On plaintiff's motion the oral part of the clerk's evidence was stricken out on the ground that only record evidence was admissible in a *nunc pro tunc* proceeding.

Weatherby testified that he was one of the plaintiff's counsel and was present at both trials. That before the submission of the case at the last trial he and defendant's attorneys made a verbal agreement which he reduced to typewriting, but which was not signed by either party, and that after the case was decided by

the court he, or his partner, as was the custom with that bar, prepared the form of judgment containing this agreement just as it was made with defendant's attorney and he took it to the clerk. That he did not have it endorsed by defendant's attorney or the judge, as that had never been done in his experience at that bar. He further testified that in the prefatory remarks to his argument, one of plaintiff's counsel read to the court the typewritten copy of the agreement in the presence of defendant's counsel.

It was agreed that plaintiff's other attorneys would testify substantially as had Mr. Weatherby. Defendant offered no further testimony and moved to strike out this evidence for plaintiff, on the ground that only record evidence was admissible, and the trial court sustained the motion.

A correction of judgment, after the close of the term, by *nunc pro tunc* proceeding, must be made from the record and not the verbal testimony of witnesses. The trial court was therefore right in striking out such testimony as requested by both parties. Such judgment can only be altered *nunc pro tunc* "upon evidence furnished by papers and files in the case, or something of record, or in the minute book or judge's docket." [Railroad v. Holschlag, 144 Mo. 253; Burns v. Sullivan, 90 Mo. App. 1; State v. Jeffors, 64 Mo. 376.]

We are left in this case with only the record evidence and we have already held in our opinion above on the motion to modify, that there is nothing in such record to justify us in questioning the judgment as entered. The law is that "the judgment appearing upon the record is presumptively the judgment of the court and not an error of the clerk." [Railroad v. Holschlag, supra.]

Defendant's position amounts to this,—that the mere silence of the minute book and the judge's docket as to the agreement will overturn the judgment as recorded in the record. If we were to allow that position

to be sound it would destroy not only the agreement in this case, but the whole judgment. For, by reference to the minute book and judge's docket, as copied above, it will be seen that they merely state a trial and verdict, without direction as to any judgment whatever. That the position is untenable we think clear for the foregoing authorities, especially Jones v. Hart, and Kreisel v. Snavely, supra, and cases therein cited. If every part of judgments entered of record had to be affirmatively authorized by the judge's docket, or the clerk's minutes, the bar of the state has long been in error.

The authorities cited by defendant only show that a judgment erroneously or improperly entered upon the record, may be amended *nunc pro tunc*, when proper evidence may be had from the entries in the judge's docket of the clerks' minutes or other record in the case; and that if it appears therefrom that the clerk has entered a judgment contrary to the one rendered by the court, it will be corrected, as for instance, in Robertson v. Neal, 60 Mo. 579, the court rendered a judgment by default and so entered it in his docket; but the clerk entered in the record a final judgment. But that is a state of case widely different from instances where the judge's docket is not inconsistent with and is silent as to parts of the judgment entered in the record.

Our conclusion is that the judgment of the trial court on the *nunc pro tunc* proceedings should be affirmed. All concur.